[Civ. No. 15116. Third Dist. May 13, 1976.]

G. M. FLICK et al., Plaintiffs and Appellants, v.
EXXON CORPORATION et al., Defendants and Respondents.

## COUNSEL

Asmundson & Tune, Vigfus A. Asmundson, Kenneth S. Tune, Van Tassell, Sullivan & Van Tassell and Vance J. Van Tassell for Plaintiffs and Appellants.

Downey, Brand, Seymour & Rohwer, John F. Downey, Joseph S. Genshlea, Albert P. Lindemann, Jr., McCutchen, Doyle, Brown & Enersen, William W. Schwarzer, John R. Reese, Sullivan & Cromwell, Roy H. Steyer, Robert M. Osgood and Jeffrey I. Zuckerman for Defendants and Respondents.

## OPINION

**REGAN, J.**—This is a shareholders' derivative action brought by two shareholders of Exxon Corporation ("Exxon") against Exxon and its wholly owned subsidiary, Esso (Argentina), Inc. ("Esso"); and the directors and officers of Exxon who allegedly authorized and paid a $14.2 million ransom for Victor Samuelson, a corporate executive, kidnaped by Argentine terrorists.

All directors who were on the board of Exxon at the time the payment was authorized and made, and the secretary of the corporation, were named and served as defendants. All of these individual defendants appeared specially and moved, pursuant to section 410.30 and 418.10 of the Code of Civil Procedure, to quash the service of the summons and complaint on them and, in the alternative, to have the court dismiss the action on the ground of inconvenient forum.

Exxon conceded jurisdiction but moved for dismissal on the ground of inconvenient forum. Esso made the same motions as the individual defendants.

After a hearing the court granted a motion to quash the service of summons and complaint on the individual defendants and granted the motions of Exxon and Esso to dismiss the action on the ground of inconvenient forum.[1] Plaintiffs appeal.

At the time of the ransom payment, the plaintiff G. M. Flick, a resident of California, was the owner of 10 shares of the capital stock of Exxon. His mother, the other plaintiff and a resident of New York, was the owner of six shares.

The two plaintiffs brought this stockholders' derivative action against the individual defendants, allegedly on behalf of the corporations, claiming that the payment to the Argentine terrorists as ransom for an executive of the defendant corporations was ultra vires and a gift of corporate funds. Plaintiffs also asked for attorneys' fees in the sum of $3,550,000.

---

[1] The trial court stayed the proceedings for a period of 60 days to permit plaintiffs to determine whether to file their actions in the proper forum. At the expiration of the 60 days, the action was dismissed without prejudice. (See *Ferreira v. Ferreira* (1973) 9 Cal.3d 824, 838-839 [109 Cal.Rptr. 80, 512 P.2d 304].)

Exxon is incorporated under the laws of New Jersey and has its principal place of business in New York City. Esso is a Delaware corporation with administrative offices in Argentina and New York, and is a wholly owned subsidiary of Exxon.

There are more than 200 million shares of the capital stock of Exxon registered in the names of approximately 713,000 shareholders. These shareholders reside in all 50 states, the District of Columbia, United States possessions, and more than 20 foreign countries. Over 11 million shares of Exxon, comprising approximately 4.85 percent of the total shares outstanding, are registered in the names of persons with addresses in California.

Approximately 7.5 percent of Exxon's domestic refining capacity is in California. The retail motor fuel sales business of Exxon in California is 5.23 percent of the nationwide retail motor fuel sales business of the corporation. ·

Each individual defendant is a present or former director or officer of Exxon. These individuals reside in six states and two foreign countries. None of the individual defendants resides in, or has his principal place of business in California. No individual defendant was served with process in California.

The corporate business of the board of directors of Exxon is conducted in New York City. In some years the board has held a meeting in an area where Exxon has important operating facilities, but no such meeting has ever been held in California. In accordance with usual business practice, the organization meeting of the board is held at the time of the annual meeting of shareholders at which the directors are elected. Exxon holds its annual meeting in different cities throughout the United States in states where it has business operations and shareholder representation. The 1974 annual meeting, and the attendant organization meeting of the board, were held on May 16, 1974, in Los Angeles, California.

Exxon concededly does business in California. However, none of this business activity relates to the acts alleged in the complaint, or to any operations in Argentina, the situs of the kidnaping referred to in the complaint.

Upon information and belief, the secretary of Exxon made the following declarations: None of the acts alleged in the complaint was

performed in California. No employee of Exxon or any Exxon subsidiary or affiliate who was at the time, or now is, domiciled or resident in California, or assigned to any Exxon operations in California, performed any acts in connection with the allegations of the complaint. No individual having knowledge of the matters complained of in this action, and who might be a witness, resides or is regularly present in California. No documents or other records that might be relevant to the matters complained of have been or are in California, or would be in California in the regular course of business.

Esso was once an active operating company in Argentina, engaged in exploration for and production of petroleum and petroleum products, and in the construction of a pipeline for the Argentine state oil company. In 1966 its assets were taken over by the Republic of Argentina in exchange for a series of settlement notes. Since then, the sole function of Esso has been to receive the payments made on these notes by the Republic of Argentina. Esso has never qualified to do business, done business, owned any property, or held any meeting of the corporation or its board of directors, in the State of California. All meetings of the board are held in Buenos Aires, Argentina, and the annual meeting of the corporation is held in New York City.

All the directors and all the officers of Esso either reside and have their offices in Argentina or reside in the New York area and have their offices in New York. No director, officer or employee of Esso resides in the State of California or would be in the state in the regular course of business. Neither Esso, nor any person acting on behalf of Esso, took any action in connection with the matters complained of in this action.[2]

As herein noted this action is a shareholders' derivative suit for damages, accounting and restoration of corporate assets. "Superficially the shareholder appears to be suing on behalf of himself and other shareholders similarly situated. But actually he is not, for no shareholder has a cause of action in his own right . . . . The cause of action is in the corporation, and the shareholder is only a nominal party suing on its behalf, to compel the assertion of its claim after its failure to act." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 179, p. 1852.)

---

[2]Esso moved to dismiss on the ground of lack of personal jurisdiction as well as inconvenient forum. Contrary to the plaintiffs' allegation, the trial court never acted upon the jurisdictional portion of the motion.

Plaintiffs assert that the State of California has jurisdiction, contending:

1. California has jurisdiction here.

    a. National corporation directors who cause loss to substantial numbers of shareholders in this state by wrongful misappropriation of corporate funds outside this state are subject to jurisdiction in this state.

    b. It is fair to require directors of a national corporation to respond to shareholder actions in California, where the directors were elected and where thousands of the corporation's shareholders reside.

2. California is a convenient forum.

    a. A shareholder derivative action brought by a resident California plaintiff against national corporation directors should be tried in California, where the plaintiff shareholder resides.

    b. California is a convenient forum for trial of a corporate derivative action brought by a resident plaintiff shareholder against corporate directors who are elected and met and who direct management of substantial corporate assets and operations in this state.

Defendants summarize their position as follows:

"Appellants would impose jurisdiction on the individual defendants not because they are present here, or on account of any act that any of the defendants committed or caused to be committed in California, or on account of any direct harm allegedly suffered in California by any party, but essentially because a substantial number of shareholders of Exxon Corporation reside here. To this it is added, equally irrelevantly, that the corporation is otherwise engaged in business here, that a subsequent annual stockholders' meeting was held here and that the individual defendants took scattered trips to California for reasons totally unrelated to the alleged cause of action. The standards of *International Shoe* [*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057] and *Buckaye* [*sic*] *Boiler* [*Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893 (80 Cal.Rptr. 113, 458 P.2d 57)], 'traditional notions of fair play and substantial justice,' are not satisfied by these facts. Unless it is to be held that individuals lose their due

process rights because they agree to serve as directors or officers of a large corporation, plaintiffs' contention must be rejected.

"If the individual defendants are not subject to the personal jurisdiction of the California courts, there is no case left. Exxon Corporation and Esso (Argentina) Inc. are merely nominal defendants against whom no relief is sought. If the individual defendants against whom the relief is sought are not properly before the courts here, the action must be dismissed."

Section 410.10 of the Code of Civil Procedure, which became operative on July 1, 1970, provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." The enactment of this statute has made the long-arm jurisdiction of California courts coextensive with constitutional boundary lines and has extended this jurisdiction to the outermost limits of the due process clause. (Gorfinkel & Lavine, *Long-Arm Jurisdiction in California Under New Section 410.10 of the Code of Civil Procedure,* 21 Hastings L. J. 1163, 1165, 1167; see also Green, *Jurisdictional Reform in California,* 21 Hastings L. J. 1219, 1241-1242; Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121.)

Two United States Supreme Court decisions contained decisional law that was instrumental in motivating the Legislature to adopt section 410.10. (*Martinez* v. *Perlite Institute, Inc.* (1975) 46 Cal.App.3d 393, 397 [120 Cal.Rptr. 120].) In the landmark case of *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057], the court set forth the following guiding principle: "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

After reviewing the history of the law in the particular area, the court in *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 222-223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199], made this comment: "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years.

Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."

The leading case in this state is *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57], where the Supreme Court states (at pp. 898-899):[3] "A defendant not literally 'present' in the forum state may not be required to defend itself in that state's tribunals unless the 'quality and nature of the defendant's activity' in relation to the particular cause of action makes it fair to do so. [Citations.] Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' [Citation.] Furthermore, unless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity [citation], the particular cause of action must arise out of or be connected with the defendant's forum-related activity. [Citations.]"

We return to the plaintiffs' position. Basically, they contend that an individual who serves as a director or officer of a corporation subjects himself to personal jurisdiction in a stockholders' derivative action in any state where a substantial number of that corporation's stockholders reside. They attempt to bolster their position by citing the following facts: Exxon does business in California; two months after the ransom was allegedly paid, the directors were elected at an annual stockholders' meeting held in California; and, some of the directors have visited California on occasion.

We recognize the principle that a state has the power to exercise jurisdiction over individuals who cause effects in the state by an act done elsewhere. The statute drafted by the Judicial Council and the State Bar (Code Civ. Proc., § 410.10) preserves the flexibility required by the "fair play and substantial justice" test of *Internat. Shoe Co.* v. *Washington,*

---

[3]This case was decided prior to the enactment of section 410.10 of the Code of Civil Procedure.

*supra.* (Li, Attorney's Guide to Cal. Jurisdiction and Process (Cont. Ed. Bar 1970) § 3.7, p. 159.) We believe this is the key. ■ In other words, is it fair for a California court to try this case? We think not. (See *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264].) First of all, the effects caused in this state are minimal. Secondly, the alleged cause of action did not arise out of Exxon's local activities, and, indeed, had no connection with its California operations. (See *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].)

In *Hanson* v. *Denckla* (1958) 357 U.S. 235, 251 [2 L.Ed.2d 1283, 1296, 78 S.Ct. 1228], the court made the following pertinent comment: "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." Furthermore, this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendants exercised in California. (*Id.,* at p. 252 [2 L.Ed.2d at p. 1297].)

In *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 996 [107 Cal.Rptr. 744], the court states: "Jurisdiction based upon 'minimum contacts' is exercisable over both individuals and corporations. (Gorfinkel & Lavine, *Long-Arm Jurisdiction in California, supra,* 21 Hastings L.J. at p. 1180, citing Rest.2d Conflicts, § 845.) That jurisdiction exists, however, only where 'the particular cause of action [arises] out of or [is] connected with the defendant's forum-related activity.' (*Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].) Conduct by a person outside the forum state purposefully availing himself of the law of the state for the purpose of entering into a contract with a resident of the forum is sufficient minimum contact. (*McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; cf. *Hanson* v. *Denckla,* 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].)"

Again, however, the cause of action in question does not arise out of or is it connected with the defendants' forum-related activities. Nor has Exxon purposefully availed itself of the law of the state so as to subject its directors and officers to personal jurisdiction under the facts of this particular case. We conclude the record fails factually to establish "minimum contacts" of either Esso or the individual defendants with respect to the cause of action alleged in the complaint.

The order of the trial court quashing service of summons on the individual named defendants is affirmed.

Since we hold that the service of summons and complaint on the individual defendants must be quashed, that leaves only the corporations, Exxon and Esso, in the case as named defendants. However, Exxon and Esso are the real plaintiffs and they alone would benefit from a judgment for plaintiffs. (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 107 [81 Cal.Rptr. 592, 460 P.2d 464].) The shareholders derive no benefit therefrom except the indirect benefit resulting from a realization upon the corporation assets. (*Ibid.*) ■ Hence, there are none but nominal defendants remaining in the case and the judgment of dismissal must be affirmed (see *Spellacy* v. *Superior Court* (1937) 23 Cal.App.2d 142, 146 [72 P.2d 262]) because the forum state has no jurisdiction over the essential party defendants.

Our disposition renders it unnecessary to reach plaintiffs' contention that California is a convenient forum.

Puglia, P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 8, 1976.