[Civ. No. 16951. Third Dist. Jan. 26, 1978.]

STANLEY CONSULTANTS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY,
Respondent;
C. W. PHELPS, Real Party in Interest.

COUNSEL

Stanley, Lande, Coulter & Pearce, Jon R. Pearce, Neumiller & Beardslee, Arthur Cofod and Darrell Glahn for Petitioner.

No appearance for Respondent.

Albert E. Cronin, Jr., for Real Party in Interest.

OPINION

EVANS, J.—Petitioner seeks a writ of mandate directing respondent superior court to vacate its order denying petitioner's motion to quash service of summons and to enter a new order granting the motion. (See Code Civ. Proc., § 418.10.) ▓▓▓ The sole issue presented is whether California may constitutionally assert jurisdiction over a nonresident corporation for alleged breach of contract of employment where: (1) the employment activities giving rise to the complaint occurred outside this state, and (2) the negotiations for the contract of employment transpired in interstate commerce and were concluded in the State of Iowa.

In January 1973, petitioner, an Iowa corporation with its offices in Muscatine, Iowa, contracted with the government of Antigua to furnish that government with a port manager to operate a harbor facility. In order to locate such a port manager, petitioner contacted the American Association of Port Authorities in Washington, D.C., and received the names of several qualified individuals including that of real party in interest, Phelps. Shortly thereafter, Phelps was contacted by telephone and the job requirements were described to him. He indicated his interest in such a position and submitted his resume to petitioner; further negotiations by exchange of letters and telephonic communications followed and as a result, petitioner invited Phelps and his wife to Muscatine, Iowa, for a job interview. In February 1973, Phelps and his wife went to Muscatine, and while there, petitioner and Phelps entered a contract pursuant to which Phelps agreed to undertake the position of port manager in Antigua commencing March 26, 1973.[1]

---

[1] We feel constrained to emphasize that all employment negotiations between petitioner and real party in interest were conducted either by interstate communication or at petitioner's office in Iowa.

In 1975, petitioner's contract was terminated by the Antigua government, claiming it lacked sufficient funds to pay for petitioner's services. In August 1975, Phelps and his wife returned to Muscatine where he was assigned other duties which required performance of services in Barbados and Liberia. After completing his services in Liberia, Phelps returned to Muscatine, Iowa, and remained in the employ of petitioner until May 1976. At that time the employment relationship was terminated.

Although Phelps commenced an action against petitioner in San Joaquin County, California, in June 1976, he continued to reside in Muscatine until August 1976.

## DISCUSSION

■ Code of Civil Procedure section 410.10 permits California courts to exercise jurisdiction over nonresidents on any basis not inconsistent with the United States or California Constitutions. The section "manifests an intent to exercise the broadest possible jurisdiction. The constitutional perimeters of this jurisdiction are found in the decisions of the United States Supreme Court." (*Michigan Nat. Bank* v. *Superior Court* (1972) 23 Cal.App.3d 1, 6 [99 Cal.Rptr. 823].)

■ A very basic constitutional principle permits a court to exercise personal jurisdiction over a nonresident so long as the nonresident maintains such minimal contacts with the state that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].)

"One of the recognized bases for jurisdiction in California arises when the defendant has caused an 'effect' in the state by an act or omission which occurs elsewhere. (*Quattrone* v. *Superior Court, supra,* 44 Cal.App.3d 296 at p. 303 [118 Cal.Rptr. 548]; see also *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199].) This ground for assertion of jurisdiction is discussed by the Judicial Council in its comment to section 410.10 of the Code of Civil Procedure reprinted in West's Annotated California Codes, page 472, in the following language: 'A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, *unless the nature of the effects and of the individual's relationship to*

*the state make the exercise of such jurisdiction unreasonable.* [Citations.] When jurisdiction over an individual is based solely upon such act or omission, only a claim for relief arising from such act or omission may be asserted against the individual. [Citation.]' " (Italics in original.) (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445-446 [128 Cal.Rptr. 34, 546 P.2d 322].)

However, the *Sibley* court recognized that the mere cause of an effect in California is not necessarily sufficient to afford a constitutional basis for the extension of jurisdiction. At page 446, the court stated, "[N]otwithstanding this 'effect,' the imposition of jurisdiction may be 'unreasonable.' As was held in *Internat. Shoe Co.* v. *Washington, supra,* 326 U.S. 310, a suit may not be maintained where jurisdiction offends ' "traditional notions of fair play and substantial justice." ' "

The United States Supreme Court in *Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], held that in cases in which jurisdiction is sought on the basis of defendant's occasional activities, "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Id.* at p. 253 [2 L.Ed.2d at p. 1298].)

■ At the hearing on petitioner's motion to quash, Phelps asserted that certain corporate activities covering a span of approximately 15 years amounted to sufficient "contact" to allow California courts to assert jurisdiction over petitioner. An examination of those alleged contacts does not support that thesis.

In two instances, in 1964 and 1967, petitioner, under contract with the Ets-Hokin Corporation, conducted tests and made modifications on turbines located at hydroelectric plants in California. In 1968, petitioner entered into a contract to test turbines for the Pacific Gas and Electric Company located in San Francisco. Pacific Gas and Electric cancelled the contract before any work was performed. In 1967, petitioner, at the request of the United States government, made cost estimates for barracks and aircraft starting system for the naval air station located at Miramar, California. Approximately 10 years ago, petitioner performed engineering and design work for a power plant extension in Subic Bay, Phillipines. That contract was entered into with the Office of Naval Facilities and is asserted as a California contact by virtue of the location of the Naval Facilities Engineering Command in San Francisco,

California. Similarly, petitioner performed engineering and design services for a power plant to be located at the United States Naval Air Station in Adak, Alaska. That contract was executed with the Naval Facilities Engineering Command at first in Seattle and later in San Bruno, California. That contract was asserted as a California contact by virtue of petitioner's dealing with the United States Navy at San Bruno, California, engineering headquarters.

It is undisputed that petitioner does not maintain an office or place of business in California; has neither assets, bank accounts, nor telephone listings in California, and does not presently nor has it ever been licensed or authorized to transact business as a foreign corporation in this state. Predicated upon the asserted California contacts, it is clear that this state does not have general jurisdiction over petitioner. It may not be said that petitioner's activities within California are extensive, wide-ranging, substantial, continuous, or systematic. In *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264], the court considered facts which revealed that the defendant had made 20 trips a year into California over a period of 7 years, had an independent contractor relationship with a local broker, and held as well a California Public Utilities Commission license. Under those circumstances, the court failed to find general jurisdiction by California courts. If general jurisdiction did not there exist, clearly there can be no general jurisdiction in the present case as a result of petitioner's minute contacts within California described as the testing of two turbines for the Ets-Hokin Corporation in 1964 and 1967, making cost estimates for federal facilities located in California, and entering into contracts with the United States government for services to be performed in foreign countries or foreign states.

██ In this case the record fails to disclose that petitioner has purposefully availed itself of the privilege of conducting business in California, or of the benefits and protection of California laws. The record does not indicate that petitioner anticipated the derivation of any economic benefit in the State of California as a result of hiring real party in interest, although real party in interest previously had been a resident in this state.

In *Hanson* v. *Denckla, supra,* 357 U.S. at page 251 [2 L.Ed.2d at page 1296], the court made the following comment, "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

Additionally, the instant proceeding may not be said to be one to enforce an obligation that arose from a privilege that petitioner exercised in California. In *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 996 [107 Cal.Rptr. 744], the court stated, "Jurisdiction based upon 'minimum contacts' is exercisable over both individuals and corporations. (Gorfinkel & Lavine, *Long-Arm Jurisdiction in California, supra,* 21 Hastings L.J. [1163] at p. 1180, citing Rest.2d Conflicts, § 845.) That jurisdiction exists, however, only where 'the particular cause of action [arises] out of or [is] connected with the defendant's forum-related activity.' (*Buckeye Boiler Co.* v. *Superior Court,* 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].) Conduct by a person outside the forum state purposefully availing himself of the law of the state for the purpose of entering into a contract with a resident of the forum is a sufficient minimum contact. (*McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; cf. *Hanson* v. *Denckla,* 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].)" However, the cause of action in question does not arise out of nor is it connected with any of petitioner's forum-related activities, nor has petitioner purposefully availed itself of the laws of the state so as to subject its directors or officers to personal jurisdiction under the facts of the particular case. The record fails factually to establish minimum contacts by petitioner with respect to the cause of action alleged in the complaint. A leading case in this state on the question of jurisdiction over foreign residents is *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57]. In that case the Supreme Court at pages 898-899 stated, "A defendant not literally 'present' in the forum state may not be required to defend itself in that state's tribunals unless the 'quality and nature of the defendant's activity' in relation to the particular cause of action makes it fair to do so. [Citations.] Such a defendant's activity must consist of 'an act done or transaction consummated in the forum State' or 'some [other] act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' [Citation.] Furthermore, unless the defendant's forum-related activity reaches such extensive or wide-ranging proportions as to make the defendant sufficiently 'present' in the forum state to support jurisdiction over it concerning causes of action which are unrelated to that activity [citation], the particular cause of action must arise out of or be connected with the defendant's forum-related activity. [Citations.]"

Petitioner's contacts with California appear to be far more minimal than those described in *Belmont Industries, Inc.* v. *Superior Court* (1973)

31 Cal.App.3d 281 [107 Cal.Rptr. 237], *Sibley* v. *Superior Court, supra,* 16 Cal.3d 442, and in *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, and as in each of those cases, to vest California jurisdiction would be unreasonable.

Because petitioner's contacts with California are so extremely insufficient to justify jurisdiction, it is not necessary to undertake the additional process of balancing the inconvenience of defending the action in this state against the interest of plaintiff suing locally, and of the state assuming jurisdiction. (See *Cornelison* v. *Chaney, supra,* 16 Cal.3d at pp. 150-151; *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d 893.) To hold that a foreign corporation has subjected itself to the judicial jurisdiction of California by the simple act of employing a California resident to perform services not within the State of California would be totally inconsistent with the Constitutions of this state and of the United States, and would be an unreasonable and an unrealistic extension of jurisdiction over a nonresident foreign corporation.

Let a peremptory writ of mandate issue directing the Superior Court of San Joaquin County to vacate its order denying petitioner's motion to quash service of summons and to enter a new order granting the motion.

Paras, Acting P. J., concurred.

**REYNOSO, J.**—I dissent.

California has chosen to permit its courts to exercise the broadest possible jurisdiction. (Code Civ. Proc., § 410.10; *Michigan Nat. Bank* v. *Superior Court* (1972) 23 Cal.App.3d 1, 6 [99 Cal.Rptr. 823].) Phelps' choice of a California forum should be respected if consistent with the Constitution of California and that of the United States.

In determining whether Stanley's California activities are sufficient to provide jurisdiction over Stanley in California, we must consider the quality and nature of those activities in relation to this particular cause of action. I conclude that it is fair to provide jurisdiction in the California courts. (See *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898 [80 Cal.Rptr. 113, 458 P.2d 57].)

Stanley's contacts with California have been considerable. It is true that Stanley is an Iowa corporation which maintains no office or place of business in California, has never had a certificate of authority to transact business in California, maintains no bank account or other assets in California and does not maintain a telephone listing in this state. Nonetheless, Stanley has been active in California for some time. In 1964 and 1967 Stanley performed turbine tests and design modification for four hydro-electric power plants for Ets-Hokin Corporation in Auburn, California. In 1968 Stanley contracted to perform a turbine test for Pacific Gas and Electric Company in San Francisco, but the contract was cancelled before performance. In 1974 Stanley performed consultation work in Iowa for Hahn-Newman Development Corporation, a California corporation, for its Iowa shopping center. Pacific Gas and Electric and Hahn-Newman contacted Stanley in Iowa for this work. Stanley routinely files federal government forms with California-based federal agencies so that Stanley can solicit federal engineering jobs. Stanley rendered services in connection with a diesel plant extension in Alaska, the contract being awarded out of the naval facility in San Bruno, California.

The record discloses further Stanley activity despite the fact that severe competition usually proscribes Stanley from seeking business in California. More than 10 years prior to this action Stanley did design work in the Philippines naval base, the contract being awarded out of San Francisco. In addition, at that time, Stanley did cost estimates for the Navy in San Diego. Stanley also performed four turbine tests for the California Department of Water Resources after being contacted in Iowa by the department. A proposal was submitted to Industrial Clean Air, Inc., in Berkeley, California. Stanley did not get the job.

Stanley hires employees from throughout the nation, and admits soliciting employees other than Phelps from California. However, it does not have records on such hiring activities. Stanley has advertised in California newspapers including the Los Angeles Times, San Francisco Chronicle, Examiner, San Jose Mercury-News, Los Angeles Sentinel, and the San Diego Union and Tribune. In addition, Stanley places "business card" advertisements in professional periodicals distributed in California.

Within the continental United States Stanley has conducted operations in 44 states and the District of Columbia in the past 15 years. It holds itself ready to perform contracts throughout the world, in addition to the

United States, with the exception of a few countries. Such world-wide operations are in fact performed.

While the forum-related activity of Stanley is extensive, I agree with the majority that it is insufficient to constitute "doing business" within the state. The extent and character of such activity would not provide a basis for jurisdiction without consideration of the facts surrounding this particular litigation. (See *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 148 [127 Cal.Rptr. 352, 545 P.2d 264].) However, such activity, together with the quality and nature of the activity giving rise to this litigation, must be considered in relation to this particular cause of action. (See *Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d at p. 898.)

The facts giving rise to this litigation are as follows: Phelps was contacted by Stanley while working in Stockton, California. Phelps was born in California and had spent his entire life in California until he was recruited by Stanley. The negotiations relative to the contract at issue were conducted by telephone while Phelps was in California and person-to-person in Iowa where Phelps had traveled upon Stanley's request. The written contract was signed by Phelps in California. The contract called for Stanley to pay air fare to and from Stockton, California, and provided that the point of departure and the point of return was to be Stockton, California. Phelps played no part in opening the negotiations, but was recruited entirely at Stanley's initiative.

The record shows that Stanley sought out Phelps in California, opened negotiations with him, and agreed to provide transportation to the place of performance of the contract and to return Phelps to California after the contract was performed. When considered together with the fact that Stanley has recruited other employees from California, and has occasional business contacts with this state, such activity in securing the Phelps contract provides a sufficient relation to this state for the assertion of jurisdiction over Stanley in a suit concerning this particular contract. (See *Buckner* v. *Industrial Acc. Com.* (1964) 226 Cal.App.2d 619, 623-624 [38 Cal.Rptr. 332]; see also *Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].)

The defendant has engaged in activity of the requisite quality and nature in the forum state and the specific cause of action is sufficiently related to that activity. Thus, the propriety of an assumption of jurisdiction depends upon a balancing of the inconveniences to the defendant in having to defend in the forum state against both the interest

of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction. (*Buckeye Boiler Co.* v. *Superior Court, supra,* 71 Cal.2d at p. 899.) Factors to be considered in determining whether the forum state is an appropriate place of jurisdiction include the interest of the state in providing a forum for its residents or in regulating the business involved, the relative availability of evidence and the burden of defense and prosecution in one place rather than another, the ease of access to an alternative forum, the avoidance of multiplicity of suits and conflicting adjudications, and the extent to which the cause of action arose out of the defendant's forum-related activities. (*Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1]; *Martinez* v. *Perlite Institute, Inc.* (1975) 46 Cal.App.3d 393, 399 [120 Cal.Rptr. 120].)

California has an interest in providing life-long California residents, recruited in California, with a forum in which to bring an action for breach of an employment contract by an out-of-state firm. The burden on Stanley to defend here is not as great as the burden of Phelps to prosecute elsewhere, since Stanley is a large company doing world-wide business while Phelps is an individual with limited resources. These factors indicate that a California forum is appropriate. If Phelps is not allowed to bring his action here, the burden of out-of-state prosecution may prevent his bringing the action anywhere. (See *McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199].)

I would deny the petition for a writ of mandate.

The petition of the real party in interest for a hearing by the Supreme Court was denied March 23, 1978. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.