**FRANK E. BASIL, INC., Appellant,**

v.

**Samuel T. GUARDINO, Appellee.**

**No. 79–982.**

District of Columbia Court of Appeals.

Argued April 17, 1980.

Decided Nov. 14, 1980.

Cherif Sedky, Washington, D. C., with whom Mary E. Wagner, Washington, D. C., was on briefs, for appellant.

Karl W. Pilger, Washington, D. C., with whom Thomas A. Kennelly, Washington, D. C., was on brief, for appellee.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

KELLY, Associate Judge:

The issue before us is whether a California court's exercise of *in personam* jurisdiction over appellant (Frank E. Basil, Inc., a Liberian corporation) in a breach of contract action brought by appellee Samuel T. Guardino was consistent with the due process clause of the Fourteenth Amendment. The trial court, concluding that the California court had jurisdiction, ruled that it was bound by article IV, section I of the United States Constitution to give full faith and credit to the California default judgment against appellant. We reverse.

I

The material facts are not in dispute. In July of 1976, appellee Guardino, a well-drilling engineer residing in San Jose, California, answered an advertisement placed by appellant, a Liberian corporation exclusively engaged in construction contracting in Saudi Arabia,[1] in a nationally-circulated trade journal, soliciting a deputy general manager for appellant's work in Saudi Arabia. John J. Gibson, Basil's vice-president, received Guardino's resume in the District of Columbia (where it was forwarded from the trade journal's office in Colorado) and telephoned Guardino twice in California to discuss the job. In late 1976, Gibson flew out to San Jose and interviewed appellee and his wife (then fiancée). Gibson sent a follow-up letter; Guardino later called him to accept the job offer. Gibson then sent a letter welcoming Guardino as an employee; he also signed and sent him an employment

---

1. Basil's only office in the United States is in the District of Columbia. During the five years preceding the California action, Basil had no office, agent for service of process, bank accounts, telephone listing, Post Office box, subsidiaries, affiliates, or employment recruiters in California. Of its approximately three

contract, which Guardino signed in California.[2]

The employment agreement specified that the "point of hire" for calculating transportation expenses [3] was San Jose. It also stated that "place of employment" was Saudi Arabia and that "the agreement and the employment of [Guardino would] be governed in all respects by the laws, statutes, ordinances and regulations of the Kingdom of Saudi Arabia."

Guardino left for Saudi Arabia. Sometime after he arrived, a dispute arose over the terms of the employment contract. Guardino then, according to appellee's brief, "treated the contract as having been breached by [appellant] and . . . returned home to California." He called Gibson in the District of Columbia. Gibson later went to California for further discussions. On his return to the District, Guardino called him again; he also sent Gibson an invoice itemizing his claims.

On December 27, 1977, Guardino brought an action against Basil for breach of contract in the Superior Court of Santa Clara, California. Basil was timely served with process, but did not appear in the California proceeding; a default judgment for $19,-308.27 plus interest was entered against appellant on May 22, 1978.

On September 12, 1978, Guardino brought a suit to enforce the California judgment in the Superior Court of the District of Columbia. Cross motions for summary judgment were heard on August 3, 1979. Basil asserted that the trial court could not enforce the default judgment against it because the California court had never acquired *in personam* jurisdiction over it. Basil's motion was denied, Guardino's was granted, and Basil noted this appeal.

## II

"It has long been the rule that a valid judgment imposing a personal obligation or

and a half thousand employees, only seven were California residents during this period.

**2.** It is unclear from the record before us whether Basil ever received the copy of the contract Guardino signed.

duty in favor of the plaintiff may be entered only be a court having jurisdiction over the person of the defendant." *Kulko v. California Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (citations omitted). Furthermore, "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (citing *Pennoyer v. Neff*, 95 U.S. 714, 732–33, 24 L.Ed. 565 (1878)).

In determining whether the California court had jurisdiction over appellant, we must apply California law: "While it is fundamental that [the District of Columbia] courts may inquire into the jurisdiction of a foreign court before enforcing [its] judgment . . . the jurisdictional standards to be applied are not our own but those of the foreign forum, if [its] standards comply with constitutional due process." *Varone v. Varone*, D.C.App., 296 A.2d 174, 177 (1972) (citations omitted).

California's long arm statute states:

A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of the United States. [Cal.Civ.Pro.Code § 410.10 (West).]

California courts have consistently held that § 410.10 "manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional consideration." *Sibley v. Superior Court of Los Angeles County*, 16 Cal.3d 442, 446, 128 Cal.Rptr. 34, 36, 546 P.2d 322, 324, *cert. denied*, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976) (citations omitted); *Cornelison v. Chaney*, 16 Cal.3d 143, 127 Cal.Rptr. 352, 545 P.2d 264 (1976); *Buckeye Boiler Co. v. Superior Court*, 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969).

**3.** *See* text *infra* at 78.

■ Therefore, our task is to determine, *de novo*,[4] whether the California court's exercise of jurisdiction in this case is consistent with both California and Federal constitutional law regarding due process.[5]

■ The two principal due process limitations on a state court's power to render a valid personal judgment against a nonresident defendant are: (1) adequate notice to the defendant, *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and (2) personal jurisdiction over the defendant, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Appellant concedes that it received adequate notice; therefore, we need only decide whether the California court had personal jurisdiction over the company.

■ The basic constitutional test for personal jurisdiction if a defendant is not physically present within the territory of the forum is whether it has sufficient "minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, supra* at 316, 66 S.Ct. at 158 (citing *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

■ In determining whether a corporation is "so far 'present' [in a state] as to satisfy due process requirements" one necessarily looks to "the [in-state] activities carried on in its behalf by those who are authorized to act for it." *Id.* Those activities may give rise to one of two alternate bases for *in personam* jurisdiction: general, or limited.

■ General personal jurisdiction is said to attach when a nonresident corporate defendant's continuous and systematic operations are "so substantial and of such a nature as to justify suit against it [even] on causes of action arising from dealings entirely distinct from [its in-state] activities." *Id.* at 318, 66 S.Ct. at 159 (citations omitted). *See generally Buckeye Boiler Co. v. Superior Court, supra*, at 898–900, 80 Cal. Rptr. at 117–18, 458 P.2d at 61–62.

Limited personal jurisdiction, on the other hand, may be exercised only when there is a "substantial nexus" between the plaintiff's cause of action and the defendant's in-state activities. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Sibley v. Superior Court of Los Angeles County, supra; accord Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, D.C.App., 355 A.2d 808 (1976).

The trial court's ruling does not conclude, nor does appellee contend on appeal, that appellant's contacts with California support the exercise of general jurisdiction. We therefore consider only the possible bases for limited jurisdiction over appellant.

■ California has long applied a doctrine that permits limited jurisdiction over a defendant whose act or omission elsewhere causes an "effect" in the state. The foregoing "effects" test is basically extremely broad, and was recently limited by the Supreme Court in *Kulko v. California Superior Court, supra*.[6] However, it has

---

**4.** *Cf. Williams v. North Carolina*, 325 U.S. 226, 239, 65 S.Ct. 1092, 1099, 89 L.Ed.2d 1577 (1945) (in determining whether petitioner's Nevada divorce would be given full faith and credit, North Carolina could decide crucial jurisdictional fact—the place of domicile of petitioner—*de novo*; finding no Nevada domicile, North Carolina court was "entitled to find that ... the Nevada court was ... without power" to grant petitioner's divorce *and* to deny the divorce decree any effect in North Carolina).

**5.** Appellant asserts that the California long arm statute is impermissibly vague. Since we hold that the trial court's ruling was inconsistent with the California decisional law interpreting

§ 410.10, we need not reach this constitutional issue.

**6.** The breadth of the test was conceded by the California Supreme Court: "It is at once apparent that the potential scope of this basis of jurisdiction is almost unlimited since any act or omission of a defendant anywhere in the world causing an 'effect' in California could theoretically subject him to ... jurisdiction [there]." *Kulko v. Superior Court*, 19 Cal.3d 514, 521, 138 Cal.Rptr. 586, 589, 564 P.2d 353, 356 (1977), *rev'd*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (held: court must consider the *defendant's* conduct in the state and not merely the 'effects' of that conduct, *i. e.*, wheth-

been actually applied in a much more limited fashion than might initially appear: thus, both a nexus between the cause of action and the in-state effect *and* a reasonableness requirement have been grafted onto the test. *See, e. g., Sibley v. Superior Court of Los Angeles County, supra* 16 Cal.3d at 446, 128 Cal.Rptr. at 37, 546 P.2d at 325 (quoting the Judicial Council's comment to § 410.10).

Reasonableness depends upon whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1239; *International Shoe Co. v. Washington, supra* 326 U.S. at 319, 66 S.Ct. at 159). *See also Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Purposefulness, in turn, depends upon two factors: (1) whether the defendant "anticipated that [it] would derive any economic benefits as a result of the contract," *Buckeye Boiler Co. v. Superior Court, supra,* and (2) whether it "assumed any obligations to [the plaintiff] which he might have sought to enforce in California." *Id.; see United California Bank v. First Bank of Oak Park,* 98 Cal.App.3d 439, 159 Cal.Rptr. 607 (1979), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856

(1980) (*Sibley* two part "purposefulness" test applied).

The only occasion when the two part test may not need to be met is when, as in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), "California ha[s] enacted special legislation manifesting an exceptional interest in regulating [certain] activities." [7] *Sibley v. Superior Court of Los Angeles County, supra* 16 Cal.3d at 449, 128 Cal.Rptr. at 38, 546 P.2d at 326. *See also Quattrone v. Superior Court,* 44 Cal.App.3d 296, 118 Cal. Rptr. 548 (1975) (defendant's issuance of shares of stock to California resident supported jurisdiction over him because activity was a subject of special California regulation).

Since this case does not involve an insurance contract, nor any other transaction legislatively singled out by California as an area in which the state has a "manifest interest in providing redress for its residents," [8] *McGee v. International Life Ins. Co., supra* 355 U.S. at 223, 78 S.Ct. at 201, *compare Quattrone v. Superior Court, supra* 44 Cal.App.3d at 306–307, 118 Cal. Rptr. *supra* at 554 (state has special interest in fraudulent issuance of stock in California as evidenced in the provisions of the Corporate Securities Law), we look to whether

---

er the defendant purposefully availed itself of the privilege of acting in the forum).

**7.** Both appellee and the trial court concluded that *McGee v. International Life Ins. Co., supra* (nonresident insurance company's (1) mailing letter to California resident offering to reinsure him, (2) sending reinsurance certificate to him, and (3) accepting premiums mailed to it from California held to support personal jurisdiction over defendant) is dispositive of this action.

However, *McGee* is not only easily distinguished from this case, it has been repeatedly limited to its facts (the presence of special California legislation regulating insurance contracts) by both the California courts (*see, e. g., Sibley v. Superior Court, supra* 16 Cal.3d at 447, 128 Cal.Rptr. at 38, 546 P.2d at 326; *Cornelison v. Chaney, supra* 16 Cal.3d at 150 n.7, 127 Cal.Rptr. at 356 n.7, 545 P.2d at 268 n.7; *Belmont Industries, Inc. v. Superior Court,* 31 Cal.App.3d 281, 286, 289, 107 Cal.Rptr. 237, 240, 242 (1973)); and by the Supreme Court, *see, e. g., Kulko v. California Superior Court, supra* 436 U.S. at 97, 98, 98 S.Ct. at 1700;

*Hanson v. Denckla, supra* 357 U.S. at 252, 78 S.Ct. at 1239. *Accord Environmental Research Int'l, Inc. v. Lockwood Green Engineers, Inc., supra* 355 A.2d at 811 n.5: "The facts of [*McGee*] limit its relevance to the general principles enunciated therein by the Supreme Court."

**8.** Appellee's argument that § 410.10 itself is functionally equivalent to the insurance statute in *McGee,* Cal.Ins.Code 1953, §§ 1610-20, and blanketly extends jurisdiction "from insurance matters to all situations where an increased jurisdictional reach would be helpful" is not persuasive. [Brief at 10.] A state must have a manifest interest in the particular subject matter of that class of suits, not merely in helping every plaintiff who brings an action within the state to reach any defendant without. As in *Belmont Industries, supra* 31 Cal.App.3d at 288, 107 Cal.Rptr. at 242: "[This] litigation involves no public interest beyond the rights of the parties."

the other two *Sibley* prerequisites for exercising limited personal jurisdiction exist in this case. The trial court specifically found neither (nor did it find a *McGee*-type statutorily defined interest in providing its residents redress against out-of-state employers who hired them to work out of state).

### 1. Anticipated Economic Benefits

■ Appellee asserts: "That the defendant may not have derived any income from the contract with Mr. Guardino is not controlling." Brief at 11 (citing *Ault v. Dinner for Two, Inc.*, 27 Cal.App.3d 145, 151, 103 Cal.Rptr. 572, 576 (1972)). This is misguided.[9] Anticipated benefit, not actual profit, is the determinant as the court in *Ault* (holding that jurisdiction proper if California income expected) stated, "that the corporate defendant eventually derived no income from the contract is not controlling." *Id.*

Appellant neither derived any income from the contract with appellee, nor expected to. *Compare United California Bank v. First Bank of Oak Park, supra* (jurisdiction proper over defendant Illinois bank which extended loan to in-state resident "in effect" was unsecured and became uncollectible when Cal.Fin.Code, §§ 1220–1236 evidenced its special interest in the matter and the Illinois bank anticipated economic benefit from its act).

### ·2. Purposeful Assumption of California Obligations

It is obvious that merely sending an agent into California to interview a state resident for employment, to be performed elsewhere, under a contract which expressly states that the parties intend to be governed, not by California law, but by the law of the place of employment (Saudi Arabia) cannot be interpreted as a purposeful availment of "the benefits and protections of [California] laws." *Sibley v. Superior Court of Los Angeles County, supra* 16 Cal.3d at 447, 128 Cal.Rptr. at 37, 546 P.2d at 325 (citing *Hanson v. Denckla, supra* 357 U.S. at 253, 78 S.Ct. at 1239). *Compare Michigan National Bank v. Superior Court*, 23 Cal. App.3d 1, 99 Cal.Rptr. 823 (1972) (defendant, a national bank, held to have subjected itself to suit in California by attempting to enforce its security interest in certain goods in the California courts).

As the court stated in *Stanley Consultants, Inc. v. Superior Court*, 77 Cal.App.3d 444, 143 Cal.Rptr. 655 (1978), a case that is, factually, virtually indistinguishable from this:[10] "To hold that a foreign corporation has subjected itself to the judicial jurisdiction of California by the simple act of employing a California resident to perform services not within the state ... would be totally inconsistent with the Constitution of this state and of the United States, and would be an unreasonable and an unrealistic extension of jurisdiction over a nonresident foreign corporation."

Appellee claims that either of two distinct facts in ·*Stanley* (that (1) no agent of the appellant "ever set foot in California, and (2) the contract was executed in California), determined the outcome in that case, and should in this case as well. He also contends that the contract's denomination of San Jose, California, as the "point of hire" would provide a separate basis for the legitimate assertion of jurisdiction by the California courts. We discuss these purported invocations of California privileges and protections *seriatim*.

There is no indication that the place of execution of this contract was anything but fortuitous; there is no showing that appellant requested appellee to sign this contract

---

9. Appellee's contention (Brief at 19, citing *Ault*), that "The California courts have expressly ruled out the derivation of profit from that state as a controlling factor in the area of long arm jurisdiction" is similarly misleading.

10. The only clear distinction between *Stanley* and this case is that the job interview between the nonresident defendant employer and the prospective California employee occurred in Iowa, not California. (The majority in *Stanley* does not explicitly state that the written contract was signed (executed) in California, as here; the dissent does). In both *Stanley* and here the employment was to be performed and the breach occurred, abroad (there, in Anitgua).

in California or made its validity contingent upon in-state signing in order to invoke the benefits or protections of California laws. On the contrary, the contract divulges both parties' expressed intent to be bound by Saudi Arabian, not California, law.

Furthermore, in determining whether an in-state activity may serve as the basis of jurisdiction over a nonresident defendant, the plaintiff's performance does not control: "It is [the defendant's] activity in the state which must provide the basis for jurisdiction." *Cornell University Medical College v. Superior Court*, 38 Cal.App.3d 311, 316, 113 Cal.Rptr. 291, 294–95 (1974) (citing *Belmont Industries, Inc. v. Superior Court*, 31 Cal.App.3d 281, 107 Cal.Rptr. 237 (1973).

Appellee has confused conflicts principles regarding which law is to govern a contract action with the question of personal jurisdiction. Here, however, as in *Hanson v. Denckla, supra* 357 U.S. at 254, 78 S.Ct. at 1240, "the issue is personal jurisdiction not choice of law. It is resolved . . . by considering the acts of the [defendant]." It is clear that appellee's signing the contract in California is no more than "[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant [and] cannot satisfy the requirement of contact with the forum State." *Id.* at 253, 78 S.Ct. at 1239. *See also Mathes v. P. T. National Utility Helicopters, Ltd.*, 68 Cal.App.3d 182, 190, 137 Cal.Rptr. 104, 108 (1977) ("the mere fact that [the *defendant*] originally executed purchase documents [in California] does not establish the kind of 'substantial nexus' . . . necessary to support jurisdiction," *holding*, however, that jurisdiction could be based on defendant's status as an alter ego of a California parent corporation).

The fact that appellant's agent, Gibson, interviewed appellee in California (we only consider the pre-contractual visit, since the other one occurred after appellee concedes that he already deemed the contract to be breached by appellant) [11] was as fortuitous as the fact that the contract was finally signed by appellee in California. Furthermore, and most significantly, there is no direct nexus between the cause of action here and Gibson's visit to California before any contract or agreement was reached. Rather, the substantial nexus with this cause of action is in Saudi Arabia, where the breach occurred.[12]

Appellee cites, and we have found, no case where jurisdiction was asserted over a defendant in a contract action, such as this, on the sole basis of a pre-contractual interview in the forum state.

Finally, we also reject appellee's contention that the phrase "point of hire" indicated that the "locus of the contract" (again, a conflicts term) was intended to be

---

11. The breach having already occurred, there is no nexus with it created by in-forum activities afterwards.

12. We again note the distinction between conflicts principles regarding the law to be applied to a contract action and jurisdictionally affiliating actions. Under choice of law purposes, there is no question that Saudi Arabian law must be applied to this action. "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ." *National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 315–16, 84 S.ct. 411, 414–15, 11 L.Ed.2d 354 (1964).

Appellee's assertion (brief at 8) that *Ury v. Jewelers Acceptance Corporation*, 227 Cal. App.2d 11, 38 Cal.Rptr. 376 (Dist.Cal.App. 1964), stands for the proposition that the "place of acceptance is [the] locus of the contract" for conflicts purposes is incorrect. Instead, *Ury* states: "More important than the lex loci celebrationis [the place of execution] . . . is the lex loci solutionis, the law of the place of principal performance. * * * Another significant element is the agreement of the parties as to the law that is to apply." [*Id.* 227 Cal.App.2d at 380]

*See generally* 11 Williston on Contracts § 1292A at 12 *et seq.* (1968): "In the absence of fundamental public policy considerations, and there being present some reasonable relationship with the contract, there is no sound reason why the parties may not stipulate in their agreement the law to be applied and the forum in which disputes may be tried." *Id.* at 15.

The reasonable relationship of the contract to Saudi Arabia is evident: it was to be fully performed in Saudi Arabia, payment was to be made there in Saudia Arabian currency and, again, the breach occurred there.

in California or that because appellee allegedly began performing the contract on the day he left California, that one day's performance constitutes activity requested by appellant and thus created a substantial nexus with California. The designation of the "point of hire" was clearly done only for purposes of calculating travel distances and expenses since the term only appears in those sections of the agreement dealing with transportation arrangements, e. g., "R and R and Vacation Leave," "Travel Time," "Relocation and Repatriation Expenses," etc.

### Conclusion

"[T]he record fails to disclose that [appellant] . . . purposefully availed itself of the privilege of conducting business in California, or of the benefits and protections of California laws [or] . . . that petitioner anticipated the derivation of any economic benefit in the State . . . as a result of hiring [appellee] . . . ." *Stanley Consultants v. Superior Court, supra* 77 Cal.App.3d at 449, 143 Cal.Rptr. at 658.

We therefore need not "undertake the additional process of balancing the inconvenience of defending the action in [California] against the interests of [the] plaintiff in suing locally and of the state in assuming jurisdiction." *Sibley v. Superior Court of Los Angeles County, supra* 16 Cal.3d at 449, 128 Cal.Rptr. at 38, 546 P.2d at 326.[13] We note however, that appellant has conceded that it is amenable to suit in the District of Columbia, so appellee does not lack a forum in which to litigate the merits of his action.

*Reversed.*

---

13. This inquiry is, properly denominated, a forum non conveniens analysis. *See, e. g., Flick v. Exxon Corp.*, 58 Cal.App.3d 212, 129 Cal. Rptr. 760 (1976).