**COHN–DANIEL CORPORATION,**
**Appellant,**

v.

**CORPORACION DE LA FONDA, INC.,**
**Appellee.**

**No. 4709.**

Court of Civil Appeals of Texas,
Eastland.

Sept. 5, 1974.

Douglas E. Yeager, Berman, Fichtner & Mitchell, Dallas, for appellant.

James K. Peden, III, and Leo J. Hoffman, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

WALTER, Justice.

Cohn-Daniel Corporation has appealed from an order dismissing its cause of action against Corporacion De La Fonda, Inc., a New Mexico corporation for services rendered under the contract hereinafter set out. Service was had pursuant to the provisions of Article 2031b, Vernon's Ann.Tex.Rev.Civ.St., known as the Texas Long Arm Statute.

Appellee agrees that the Appellant's statement of the facts is substantially correct and is as follows:

"Appellant is a Texas corporation with its principal and only offices located in Dallas, Texas. Appellee is a New Mexico corporation with its offices located in Santa Fe, New Mexico.

The negotiations which eventually led to the execution of the contract at issue in this cause were initiated in Dallas, Texas, by a short conversation between Appellee's President, Mr. Ballen, and Appellant's Board Chairman, Mr. Cohn, which occurred in the Chaparral Club in Dallas, Texas. Mr. Ballen explained that Appellee owned an old hotel in Santa Fe and that a major rehabilitation program including heating and air conditioning was contemplated by Appellee. Mr. Cohn explained that Appellant was in the process of air conditioning an old courthouse in Dallas and that they had some experience in this type of work.

Subsequent to this initial conversation between Appellee and Appellant, one of Appellee's officers, Mr. Ashton, came to Dallas, Texas, and met with representatives of Appellant to discuss the air conditioning work to be done at the La Fonda Hotel in Santa Fe. Mr. Ashton solicited Appellant's President, Mr. Bernbaum, to travel to Santa Fe to look at the project. After Mr. Bernbaum's trip to Santa Fe, negotiations were entered into by Appellee and Appellant .by mail and telephone calls toward a contract

whereby Appellant would serve as a consultant to Appellee with regard to the air conditioning modification desired by Appellee. After negotiations by mail and telephone by Appellant in Dallas, Texas, and Appellee in Santa Fe, New Mexico, a contract was entered into by Appellee and Appellant. The contractual agreement was prepared by Appellee and mailed to Dallas, Texas, where it was executed by Appellant. The contractual document was then mailed to Appellee in Santa Fe, New Mexico, where it was executed by Appellee some eight days later."

Plaintiff's Exhibit No. 1 is a copy of the contract and is as follows:

### "AGREEMENT

For a consideration of Twenty thousand ($20,000.00) dollars, Cohn-Daniel Corporation, represented by Mr. Fred Bernbaum and Henry Cohn, do hereby agree to perform the following services for Corporacion de La Fonda, Inc. ('Corporation)'

1. Act as an owner's representative and general co-ordinator during the preliminary, design and installation phases of the proposed air-conditioning system and any modifications of the heating system at La Fonda Hotel, Santa Fe, New Mexico.

2. Assist, recommend, and direct programs necessary for the selection of a competent engineering consulting firm for a complete feasibility study and preparation of the final plans and specifications for La Fonda.

3. Recommend any changes in designs prepared by the consulting engineers and approve the final design of air conditioning and heating facilities.

4. Assist, recommend and direct the programs necessary for the selection of a competent mechanical contractor or contractors to install air-conditioning and heating facilities for La Fonda.

5. Negotiate and prepare the necessary contractual agreements between Corporacion de La Fonda, Inc. and any third parties involved in air conditioning.

6. Work with Corporacion de La Fonda, Inc. in any disputes with any third parties involved in air conditioning.

7. Recommend and suggest and supervise the best method of buying equipment.

8. Conduct periodic inspections throughout the design and installation phase and approve all requests for progress payments.

Corporacion agrees to remit Fifteen Thousand ($15,000) for services rendered in ten (10) monthly payments commencing the month of May at the rate of $1,500.00 per month and the balance of $5,000.00 on conclusion of the project.

In all respects, the final decisions will rest with Corporacion and Cohn-Daniel et al will serve in an advisory capacity vis-a-vis Corporation.

If possible, time wise as well as economics wise, the project will involve a test area (approximately 50 rooms) during March-May, 1969 and that the balance of the job will be done in winterspring of 1969–70."

In its special appearance La Fonda asserted that it was not doing business in Texas within the meaning of Article 2031b and that to exercise jurisdiction over it in Texas would deprive it of due process of law under the United States Constitution. The court's order sustaining La Fonda's special appearance recites that La Fonda's special appearance—"be and is hereby in all things sustained," thereby finding that La Fonda was not doing business in Texas within the meaning of Article 2031b and

that to exercise jurisdiction over it in Texas would be a violation of the due process clause of the Constitution of the United States.

Cohn-Daniel performed part of its contract in Texas and received some of its payments for its services by mail in Texas. The preliminary negotiations for the contract began in Dallas between La Fonda and Cohn-Daniel. Before the contract was executed, Mr. Ashton came to Dallas and talked with Cohn-Daniel about the air conditioning work to be done on the hotel. As a result of this meeting Cohn-Daniel's President went to Santa Fe to inspect the project. Thereafter negotiations were entered into between the parties by mail and telephone which culminated in the contract set out above. Cohn-Daniel performed a great deal of its obligations under the contract at its office in Dallas. It acted as the general co-ordinator of the project by telephone and mail from Dallas. Some of the payments under the contract were made by La Fonda to Cohn-Daniel by mail from Santa Fe to Dallas. Some of the checks were as small as fifty dollars and some were for several thousand dollars.

■ Our question is to decide whether the trial court had in personam jurisdiction over the nonresident defendant. First, we must determine if La Fonda is amenable to process under the Texas Long Arm Statute, Article 2031b and then decide if the exercise of personal jurisdiction over La Fonda is consistent with the requirements of due process of law under the United States Constitution. Jetco Electronic Industries, Inc. v. Gardiner, 473 F.2d 1228 (5th Cir. 1973); Atwood Hatcheries v. Heisdorf & Nelson Farms, 357 F.2d 847 (5th Cir. 1966).

■ The Texas Statute provides that any nonresident who engages in business in Texas without maintaining a regular place of business or a designated agent upon whom service may be had is deemed to have appointed the Secretary of State as its agent upon whom service of process may be made in any suit arising out of business done in this state. The statute further provides in Section 4 that such nonresident person:

> "shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State . . ."

We hold that La Fonda was doing business in Texas within the meaning of Article 2031b because the contract entered into by mail was partially performed in Texas. The record conclusively shows these facts to be true.

In O'Brien v. Lanpar Company, 399 S.W.2d 340 (Tex.Sup.1966), our Supreme Court cited Tyee Construction Co. v. Dulien Steel Products Inc., 62 Wash.2d 106, 381 P.2d 245 (1963), with approval and quoted the following:

> "The Supreme Court of Washington in Tyee Construction Co. v. Dulien Steel Products Inc., 62 Wash.2d 106, 381 P.2d 245, 251 (1963) reviewed the concept and stated three basic factors which should coincide if jurisdiction over a nonresident corporation is to be entertained:
>
> '. . . Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.' "

°The rule announced in Pennoyer v. Neff (1877), 95 U.S. 714, 24 L.Ed. 565, has been greatly expanded in recent year. See McGee v. International Life Ins. Co. (1957) 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223; International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, and Product Promotions, Inc. v. Cousteau, 5 Cir., 495 F.2d 483 (1974).

La Fonda's Mr. Ashton purposefully came to Texas and discussed the terms of the contract and thereafter, a contract was consummated by mail. The basis of this cause of action is on said contract. The design for this project was sent to Dallas by mail. The recommendations with reference to the design of the project were made from Dallas. Cohn-Daniel sitting in Dallas assisted in the selection of the engineering consulting firm for the project. La Fonda made a purposeful choice to do business with this Texas corporation. Its contacts were not "fortuitous or accidental." In Product Promotions, Inc. v. Cousteau, 5 Cir., 495 F.2d 483 (1974) at page 497 the court said:

"A second test must also be satisfied if a court's exercise of personal jurisdiction over a nonresident defendant is to be consistent with due process. Simply stated, it must not be unfair or unreasonable to require the nonresident to defend the suit in the forum. Although no particular factor controls our answer, this test requires us to consider such things as the interest of the state in providing a forum for the suit, the relative conveniences and inconveniences to the parties, and basic equities. We conclude that the cause sub judice meets the requirement of this second test.

We base this conclusion on several considerations. In the first place, Texas certainly has a legitimate and reasonable interest in providing a forum for this suit. The plaintiff is a Texas resident, the contract was made in Texas, and Texas law will surely be of some relevance in resolving the suit. In other words, we see a rational nexus between this lawsuit and a Texas forum. Measuring the convenience to one party against the inconvenience to the other results in something of a stand-off, Atwood Hatcheries, supra, 357 F.2d at 854 n. 23. Obviously it is more convenient for appellant to litigate in Texas and more convenient for CEMA to do so elsewhere. Nevertheless, the important thing is that we are unable to conclude that any hardship or inconvenience to CEMA from having to defend the suit in Texas rises to the level of a denial of due process. Finally, CEMA has pointed to no particular inequity that might result if a court in Texas exercises jurisdiction over CEMA's person in this suit, and we can find none. The maintenance of this suit against CEMA in Texas will not 'offend "traditional notions of fair play and substantial justice.' ' International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)."

We hold that the requirements set forth in O'Brien v. Lanpar Company, supra, have been conclusively established and that the Texas courts have jurisdiction over La Fonda and that the exercise of such jurisdiction does not violate the due process of law requirements of the United States Constitution.

The judgment is reversed and the cause is remanded.

RALEIGH BROWN, Justice (dissenting).

I respectfully dissent.

The record before this court conclusively establishes that the contract upon which this cause of action is based was finalized in New Mexico by La Fonda's execution. The contract does not require performance of any of its terms in Texas. There is no showing nor any finding by the trial court that the parties contemplated any performance in Texas.

The contacts as reflected by this record are not such as to justify the assumption of jurisdiction by the Texas courts and the assumption of jurisdiction under these facts, in my judgment, offends traditional notions of fair play and substantial justice.

I would affirm.