William E. MOUZAVIRES, Appellant,

v.

Harvey BAXTER, et al., Appellees.

Harvey BAXTER, et al., Appellants,

v.

William E. MOUZAVIRES, Appellee.

Nos. 11696, 11697.

District of Columbia Court of Appeals.

Argued En Banc April 28, 1980.

Decided Aug. 5, 1981.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER,* NEBEKER, HARRIS, MACK, FERREN, and PRYOR, Associate Judges.

PER CURIAM:

This is an appeal from an order entered by the trial court granting the motion of appellees Baxter, et al. (hereinafter appellees) to quash service of process on the ground that the court could not permissibly exercise personal jurisdiction over appellees.[1] Appellant contends that the trial court erred in granting appellees' motion to quash service since appellees had sufficient contacts with the District of Columbia as to fall within D.C.Code 1973, § 13–423, the District of Columbia long-arm statute.

In Part I of this opinion we set forth the pertinent facts. In Part II we address the issue of whether the "transacting any business" provision, § 13–423(a)(1), of the District's long-arm statute is coextensive with the due process clause of the United States Constitution. Concluding that it is, we then, in Part III, analyze whether appellant has alleged sufficient facts to support jurisdiction over appellees. We conclude that he has and, accordingly, reverse and remand.[2]

## I

Appellant is a District of Columbia attorney who specializes in the practice of trademark and patent law. Appellees are a North Miami Beach, Florida, law firm and its individual partners. Sometime in May 1974, appellee Lawrence B. Friedman telephoned appellant in the District of Columbia, requesting him to assist Mr. Friedman and his law firm with a lawsuit that had been filed against a client of Mr. Friedman's law firm in the federal district court

William R. Voltz, Washington, D. C., for appellant in No. 11696 and appellee in No. 11697.

Richard W. Boone, Washington, D. C., for appellees in No. 11696 and appellants in No. 11697.

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. The original panel opinion in this case, *Mouzavires v. Baxter*, D.C.App. (Nos. 11696 & 11697, Dec. 21, 1979) was vacated by our en banc order of Feb. 4, 1980.

2. Appellants Baxter, et al., in No. 11697 cross-appeal from the trial court's denial of their motion to dismiss. Since we hold that the trial court erred in granting appellees' motion to quash in No. 11696, we affirm the trial court's denial of appellants' motion to dismiss in No. 11697.

in Florida. The Florida suit involved claims that appellees' client was guilty of, *inter alia*, trademark infringements and unfair competition. In this telephone conversation, Mr. Friedman stated that his law firm lacked technical expertise in patent and trademark law, and that they needed appellant's assistance. Mr. Friedman indicated, however, that his law firm would remain active in the case with appellant assisting them.

During this telephone call, appellant agreed to work with appellees and the parties confirmed that agreement in subsequent discussions and correspondence which generally set forth appellant's duties and compensation.[3] According to the agreement, appellant was to work primarily in the District of Columbia with some consultation and possibly some court appearances in Florida. Pursuant to that agreement appellant performed considerable work for appellees, most of the work being performed in the District of Columbia and, to a lesser extent, at the United States Patent Office facilities in Virginia. Appellant's services included the preparation of interrogatories, legal memoranda, and other

matters in connection with discovery in the pending litigation.

A dispute arose as to the amount of compensation appellant was to receive for his services. Thereafter appellant brought suit in the Superior Court of the District of Columbia seeking recovery of fees for the legal services rendered. Appellees were served by certified mail at their place of business in North Miami Beach, Florida. Appellees moved to quash service of process, contending that the Superior Court could not permissibly exercise personal jurisdiction over them. The trial court granted the motion to quash service without opinion, and this appeal followed.

## II

A court may assert personal jurisdiction over a nonresident defendant where service of process is authorized by statute and where the service of process so authorized is consistent with due process. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The District of Columbia "long-arm statute" enumerates the various acts of a nonresident defendant which support the assertion of personal jurisdiction.[4] We have held

---

**3.** This was not the only occasion in which appellees contacted appellant in the District of Columbia. By letter dated May 24, 1974, appellee Lawrence B. Friedman stated:

Dear Bill:

Confirming our telephone conversation this date enclosed herewith please find the following items with regard to the above captioned matter:

1. Our client's check in the sum of $500.00, said sum representing partial retainer as outlined in your previous correspondence. Our client will periodically make additional payments from time to time in order to meet the 2500.00 retainer which you require.

2. Photostatic copy of Amended Complaint. Our previous agreement with Plaintiff's counsel requires the filing of an answer on or before June 1, 1974.

3. We trust that you will, immediately upon receipt of these items forward to us the answer, Affirmative Defenses and/or Counterclaim that we have been discussing, together with the Interrogatories that you have spoken of.

If you need any further information, or if the questions in your letter of May 15, 1974 need to be answered before the filing of responsive

pleadings, please call the undersigned immediately.

Moreover, on August 30, 1974, appellant wrote a letter to appellee Lawrence Friedman which stated in pertinent part:

Dear Larry:

This will acknowledge receipt of your letter dated August 15, 1974 and the accompanying material identified in your letter. The copy of Plaintiff's interrogatories to Defendants enclosed with your letter does not indicate the date of service upon Defendants, therefore, please advise me in this regard.

**4.** D.C.Code 1973, § 13–423 provides:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the

that this statute permits the exercise of personal jurisdiction to the fullest extent permissible under the due process clause. *See Berwyn Fuel, Inc. v. Hogan*, D.C.App., 399 A.2d 79, 80 (1979); *Rose v. Silver*, D.C. App., 394 A.2d 1368, 1369 (1978); *Cohane v. Arpeja-California, Inc.*, D.C.App., 385 A.2d 153, 158, *cert. denied*, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, D.C.App., 355 A.2d 808, 810–11 (1976) (en banc). We based this conclusion on the legislative history of the District's long-arm statute which indicated that Congress intended to vest courts of the District with jurisdictional reach identical to that in effect in Maryland and substantially the same as that in effect in Virginia. *See* S.Rep.No.405, 91st Cong., 1st Sess. 35 (1969); H.R.Rep.No.907, 91st Cong., 2d Sess. 61 (1970). Since the courts of Maryland and Virginia have interpreted their statutes as being coextensive with the due process clause, we concluded that our statute similarly contemplates the exercise of personal jurisdiction to the fullest extent permissible under the due process clause. However, the Maryland courts have observed that, while their long-arm statute supports an exercise of personal jurisdiction over all nonresident individuals and corporations that can constitutionally be reached, that proposition does not hold for each of the separate provisions of the long-arm statute. As the United States District Court for the District of Maryland stated in *Piracci v. New York City Retirement System*, 321 F.Supp. 1067, 1070 n. 3 (D.Md.1971):

> If we consider the outer limits of jurisdiction permitted by the Due Process Clause as the circumference of a circle or the outer edge of a pie, and the six "enumerated acts" in § 96(a)(1)–(6) [Maryland's

long-arm statute] as six slices of the pie it appears that some slices go all the way to the outer limit of the circle, while others stop short of the outer limit.

To be sure, Maryland courts have interpreted the "transacting any business" provision of their long-arm statute as being coextensive with the due process clause, while they have interpreted several other provisions as having a much narrower scope. *Compare Groom v. Margulies*, 257 Md. 691, 265 A.2d 249 (1970) (construing "transacting any business" provision) *with Beaty v. M. S. Steel Co.*, 401 F.2d 157, 161 (4th Cir. 1968), *cert. denied*, 393 U.S. 1049 [89 S.Ct. 686, 21 L.Ed.2d 691] (1969) (construing the Maryland equivalent of our § 13–423(a)(4), the "causing tortious injury" provision); *Vitro Electronics v. Milgray Electronics, Inc.*, 255 Md. 498, 258 A.2d 749 (1969) (same). *See Margoles v. Johns*, 157 U.S.App.D.C. 209, 218, 483 F.2d 1212, 1221 (1973); *Piracci v. New York City Retirement System, supra* at 1070.

■ Our concern in this case (as was true in *Berwyn Fuel, Rose, Cohane*, and *Lockwood Greene*) is not with the limits of other sections of the District's long-arm statute, but solely with the scope of the "transacting any business" provision. Again, the legislative history of the statute is illuminating. The relevant portion of the Senate Report accompanying the District of Columbia Court Reform and Criminal Procedure Act of 1970 states as follows:

> A new chapter (4) is added, incorporating a modified version of the first two articles of the Uniform Interstate and International Procedure Act. The uniform provisions codify recent case law with respect to extraterritorial jurisdiction over and service upon persons in civil

District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia; or

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing.

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

litigation, and supply the reorganized trial bench of general jurisdiction with a necessary procedural adjunct. Chapter 4 more specifically grants expanded bases of jurisdiction and modes of service identical to or reciprocal with those provided under the laws of the nearby State of Maryland for the courts of that State, and substantially the same as those provided in the adjacent State of Virginia and approximately 10 other States. [S.Rep.No.405, 91st Cong., 1st Sess. 35 (1969).]

Moreover, the House Report accompanying the Court Reform Act states that our statute "is modeled on the Uniform Interstate and International Procedure Act...." *See* H.R.Rep.No.907, 91st Cong., 2d Sess. 61 (1970).[5] The Commissioner's Comment, filed with the Uniform Act, states that the words "transacting any business" should be given an expansive interpretation. *See Commissioner's Comment*, § 1.03(a)(1) of the Uniform Act, 13 Uniform Laws Ann. 467 (1980). Thus, the legislative history of our long-arm statute, as well as decisions by the courts of Maryland and Virginia construing their comparable statutory provisions, compels the conclusion that the "transacting any business" provision is coextensive with the due process clause. *See Margoles v. Johns, supra* 157 U.S.App. D.C. at 215, 483 F.2d at 1218; *Meyers v. Smith*, 460 F.Supp. 621, 622 (D.D.C.1978); *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664 (1971).

Normally, our analysis would require a two-step process. First we would address the question of whether appellant had alleged sufficient facts to reach appellees under the terms of the applicable District statute. Only then, if the answer to our first inquiry was in the affirmative, would we address the due process issue. However, "[o]ur inquiry need not be bifurcated [where] the constitutional and statutory provisions are coextensive...." *Textile Museum v. F. Eberstadt & Co.*, 440 F.Supp. 30, 31 (D.D.C.1977); *see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980) ("Although the [Supreme Court of Oklahoma] noted that the proper approach was to test jurisdiction against both statutory and constitutional standards, its analysis did not distinguish these questions, *probably because [the statute] has been interpreted as conferring jurisdiction to the limits permitted by the United States Constitution*." (emphasis added) (footnote omitted)); *Piracci v. New York City Retirement System, supra* at 1070 ("So, in this case, the two questions specified by the Fourth Circuit in *Haynes* [whether the controlling statute permits service of process on the defendant, and whether service under the statute violates the due process clause] tend to merge and become essentially the same.").

■■■ Decisions in this jurisdiction interpreting the "transacting any business" provision are but applications of this principle. It is now well-settled that the "transacting any business" provision embraces those contractual activities of a nonresident defendant which cause a consequence here. *See, e. g., Rose v. Silver, supra; Cohane v. Arpeja-California, Inc., supra.*[6] Moreover, to fall within the purview of § 13–423(a)(1), a nonresident defendant need not have been physically present in the District. *See, e. g., Dorothy K. Winston & Co. v. Town Heights Development, Inc.*, 376 F.Supp. 1214, 1216 (D.D.C.1974). Indeed, we have acknowledged that, under certain circumstances, a single act may be sufficient to constitute transacting business. *Bueno v.*

---

5. The Uniform Interstate and International Procedure Act was promulgated by the National Conference of Commissioners on Uniform State Laws in August, 1962. The House of Delegates of the American Bar Association approved the Act in February of 1963.

6. Indeed, Maryland's long-arm statute, which is substantially identical to that in effect in the District of Columbia, has been interpreted as embracing those purposeful acts "in relation to [a] contract, albeit preliminary or subsequent to its execution." *Novack v. National Hot Rod Ass'n*, 247 Md. 350, 357, 231 A.2d 22, 26 (1967) (quoting *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 457, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965)); *see Du-al Corp. v. Rudolph Beaver, Inc.*, 540 F.2d 1230, 1232 (4th Cir. 1976).

*La Compania Peruana*, D.C.App., 375 A.2d 6, 9 (1977); *accord John G. Kolbe, Inc. v. Chromodern Chair Co., supra.* In sum, the sweep of the "transacting any business" provision of D.C.Code 1973, § 13–423(a)(1), covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause. *See Margoles v. Johns, supra* at 218, 483 F.2d at 1221; *Meyers v. Smith, supra* at 622; *Piracci v. New York City Retirement System, supra* at 1070; *Groom v. Margulies, supra. See also John G. Kolbe, Inc. v. Chromodern Chair Co., supra.* Thus, to determine whether the statute can reach the conduct at issue, we must consider whether appellees had sufficient contacts with the District such that the assertion of personal jurisdiction comports with due process. *International Shoe Co. v. Washington, supra.* Stated another way, we must determine whether there exists "a sufficient connection between the defendant and the forum State as to make it fair to require defense of the action in the forum." *Kulko v. Superior Court*, 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

### III

Supreme Court decisions subsequent to *International Shoe* have defined due process limits of *in personam* jurisdiction over a nonresident defendant. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). These decisions, therefore, provide the necessary guidance for an inquiry into the due process limitations of the assertion of personal jurisdiction.

In *McGee*, the plaintiff sued a Texas life insurance company in California. The Texas company's contacts with California were slight. The policyholder bought his policy from an Arizona company whose obligations were assumed by the Texas company. The company mailed a reinsurance certificate to the policyholder in California and the policyholder accepted the offer to reinsure him on the same terms as his old policy, and until his death he continued to mail premiums from California. Otherwise, the Texas company had never solicited or done any business in California. A unanimous Court ruled that it was "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." 355 U.S. at 223, 78 S.Ct. at 201.[7] The Supreme Court refined the holding of *McGee* in *Hanson.* In *Hanson*, a Pennsylvania domiciliary executed a trust in Delaware, naming a Delaware bank as trustee. Later, the settlor moved to Florida where she received trust income and purported to execute a power of appointment as to the remainder of the trust. After the settlor's death, several of the residuary legatees brought suit in Florida challenging the validity of the power of appointment. Long-arm service was made on the Delaware trustee in Delaware. The Court held that the settlor's performance of small amounts of trust administration and the receipt of trust income in Florida did not give Florida a substantial connection with the trust agreement which was the basis of the suit. Moreover, the Court pointed out that at the time of the execution of the agreement, the defendant trustee had no contacts with Florida, and the contacts of the trustee-defendant which arose subsequently were in no sense voluntary but the result of the settlor's unilateral acts years after the execution of the agreement. The Court concluded that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra*, 357 U.S. at 253, 78 S.Ct. at 1240.

Similarly, where in *World-Wide Volkswagen v. Woodson, supra*, "the defendants' only connection with Oklahoma [was] the

---

7. The provisions of D.C.Code 1973, § 13–423(a)(6) appear to be in essence a codification of this holding.

fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma," 444 U.S. at 287, 100 S.Ct. at 562, *in personam* jurisdiction could not be acquired constitutionally by means of the Oklahoma long-arm statute. The defendant automobile distributor dealt with retailers located exclusively in the tri-state area of New York, New Jersey, and Connecticut. The retail dealer who sold the vehicle in question to plaintiffs operated solely in New York. "[T]he fortuitous circumstances that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma," *id.* at 295, 100 S.Ct. at 566, was foreseeable; however, what is critical to due process is "not the mere likelihood that a product will find its way into a forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

It is important to note that in *McGee*, unlike in either *Hanson* or *World-Wide Volkswagen*, defendant had solicited business in the forum state. As the court stated in *Vencedor Manufacturing Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 891 (1st Cir. 1977); "The second fact distinguishing *Hanson* from *McGee* was the *McGee* defendant's solicitation of business in the forum state. After *McGee* it seems fair to say that one who solicits in a state may be sued there if the transaction he has sought goes sour." Again, the court in *Vencedor* noted: "*Hanson* is sufficiently distinguished from *McGee* by the absence, in *Hanson, of any solicitation or other voluntary contact* with the forum." *Id.* at 894 (emphasis added).

The distinction between a plaintiff's unilateral acts and those acts of the defendant sufficient to subject him to long-arm *in personam* jurisdiction, was highlighted in the recent case of *Pedi Bares, Inc. v. P & C*

*Food Markets, Inc.*, 567 F.2d 933 (10th Cir. 1977). Pedi Bares, a Kansas footwear manufacturer, brought suit in Kansas against P & C, a New York wholesale grocer serving independently-owned stores in New York and Pennsylvania, for the balance claimed due on goods sold. P & C had placed an order with plaintiff's New York agent, after the agent had made a business solicitation. Pursuant to the order P & C received the goods shipped to it by plaintiff at its warehouse and sent partial payment to plaintiff in Kansas. In addressing P & C's contention that it could not be reached by means of the Kansas long-arm statute without offending due process, the court stated:

> P & C contends that application of a long-arm statute cannot be based on the unilateral acts of the seller in the forum state. The argument is not pertinent here. P & C acted affirmatively. It wrote the letter which initiated the transactions. Stores serviced by P & C ordered the goods which were manufactured in and shipped from Kansas. P & C sent to Pedi Bares in Kansas payments for part of the goods. Due process does not require the presence in the forum state of the defendant or one of its agents. [*Id.* at 937.]

In the present case it is clear that, like P & C, appellees initiated the transaction; ordered the services which were performed in, and the results of which were in part dispatched from, the District; and sent payments in part for the services performed to appellant in the District. We do not, therefore, have a case where appellant relies on his own unilateral activities in asserting jurisdiction under the long-arm statute. *See also O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 343 (Tex.1966) ("Plaintiff O'Brien did not depend upon his own unilateral activity with respect to one who was outside and remained outside of Illinois, but upon the fact that Lanpar's agent contacted him in Illinois.")[8]

---

**8.** The Court in *Hanson* also distinguished *McGee* on the ground that in *McGee*, California had enacted special regulatory insurance legislation, indicating that the state had a manifest interest in providing a forum for its citizens in suits based on such insurance claims. Some courts have interpreted *Hanson* as limiting the application of *McGee* to the insurance field.

■ Both *Hanson* and *McGee* reaffirmed the *International Shoe* principle that notions of fundamental fairness require that the defendant's contacts with the forum be evaluated qualitatively rather than quantitatively. More importantly, both decisions demonstrate that proper application of the minimum contacts formula requires a consideration not only of whether a nonresident defendant has sufficient contacts with the forum, but also of whether those contacts are voluntary and deliberate, rather than fortuitous. *See Developments in the Law—State-Court Jurisdiction*, 73 Harv.L. Rev. 909, 928 (1960). *See also World-Wide Volkswagen, supra* 444 U.S. at 287, 295, 100 S.Ct. at 562, 566. As the Supreme Court has stated, "the relationship among the defendant, the forum, and the litigation ... [is] the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977) (footnote omitted).[9]

■ These considerations assume greater significance when the defendant's contacts with the forum arise out of a contractual arrangement with a forum plaintiff. Modern systems of communication have revolutionized commercial transactions to such an extent that parties may negotiate by telephone certain contractual arrangements which only a generation ago would have necessitated the physical presence of both parties in the same forum. Courts have recognized that, even though a nonresident defendant has never physically been present in the forum, his contacts with the forum when viewed qualitatively may be quite substantial. Thus, the exercise of personal jurisdiction has been sustained where the nonresident defendant's only contact with the forum has been by mail or telephone. *See, e. g., Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1973); *G & W Body Works, Inc. v. Estate of Eschberger*, 557 S.W.2d 835 (Tex.Civ.App.1977). *See also Morton v. Environmental Land Systems, Ltd.*, 55 Ill. App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1977); *Cohn-Daniel Corp. v. Corporacion De la Fonda, Inc.*, 514 S.W.2d 338 (Tex.Civ. App.1974).[10] Clearly, the most critical inquiry is not whether the nonresident defendant is physically present in the forum but whether the defendant's contacts with the forum are of such a quality and nature that they manifest a deliberate and voluntary association with the forum. As one court has stated, "[t]he operative considera-

See *Trippe Mfg. Co. v. Spencer Gifts, Inc.*, 270 F.2d 821 (7th Cir. 1959). However, most courts have interpreted *Hanson* as merely another application of the minimum contacts formula of *International Shoe* to a different set of facts. *See Aftanase v. Economy Baler Co.*, 343 F.2d 187, 196 (8th Cir. 1965); *Roumel v. Drill Well Oil Co.*, 270 F.2d 550, 557 (5th Cir. 1959); *Wisconsin Metal & Chemical Corp. v. DeZurik Corp.*, 222 F.Supp. 119 (E.D.Wis.1963). We have rejected implicitly, if not explicitly, the notion that *McGee* has only an application to the insurance field. *See Cohane v. Arpeja-California, Inc., supra*, at 158–59; *Meyers v. Smith, supra* at 624. Indeed, it is axiomatic that a state cannot, by statute, expand the jurisdictional scope of the due process clause.

**9.** By comparison, the Supreme Court recently said in *World-Wide Volkswagen*:

The concept of minimum contacts ... can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness." ... Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. [444 U.S. at 291–92, 100 S.Ct. at 564–565 (citations omitted).]

**10.** *But see Safari Outfitters, Inc. v. Superior Court*, 167 Colo. 456, 448 P.2d 783 (1969) (en banc) (contract negotiated over telephone and through the mails provided insufficient contacts with forum).

tion is that the defendant's contacts with the forum were deliberate, rather than fortuitous, so that the possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise." *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974) (footnote omitted).

Courts of other jurisdictions have had occasion to consider facts analogous to those presented in this case under similar statutes. *See, e. g., Cook Associates, Inc. v. Colonial Broach & Machine Co., supra* (jurisdiction upheld in suit between resident employment agency and nonresident defendant); *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966) (Illinois judgment secured by Illinois attorney through long-arm jurisdiction over Texas client held enforceable in Texas); *Toulouse v. Swanson*, 73 Wash.2d 331, 334, 438 P.2d 578, 580 (1968) (jurisdiction proper in suit by resident attorney to collect fees) ("It is beyond dispute that defendant consummated a transaction in this state when he employed plaintiff as his lawyer; and that the present action arises from that transaction."); *cf. Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235 (E.D.Va.1977) (jurisdiction over Maryland attorney sustained in breach of contract suit brought by Virginia resident). *But see Winick v. Jackson*, 49 Misc.2d 1009, 268 N.Y.S.2d 768 (1966) (jurisdiction improper in suit between resident attorney and nonresident client in suit to collect attorneys fees). We find the analysis of those courts that have upheld jurisdiction in these circumstances to be persuasive. *O'Brien v. Lanpar Co., supra* and *Cook Associates, Inc. v. Colonial Broach & Machine Co., supra*, are illustrative of these cases. In *Lanpar*, a Texas company retained an Illinois attorney

to prosecute an action on its behalf in the federal district court in Illinois. Later, the attorney brought suit in Illinois, alleging that he was not compensated fully under the terms of the contract. A default judgment was secured and plaintiff brought suit in Texas to enforce judgment. The Supreme Court of Texas held that jurisdiction over the defendants in Illinois was proper and that the Illinois judgment thus was entitled to full faith and credit in Texas.[11]

In *Cook Associates*, a Michigan company contacted an Illinois employment agency by telephone. The agency recommended a prospective employee to the firm; the employee was later hired but the agency's fee was never paid. As the court stated:

> Once defendant informed plaintiff that it was interested in a certain person to fill a position and agreed to pay plaintiff's referral fee if it eventually hired that person, defendant knew, or should have known, that it had entered into a contract with an Illinois agency, that the agency would perform its services from its office in Illinois, that the fee, if due, would be paid to plaintiff in Illinois, and that if the fee were not paid as promised, defendant might be liable to suit in the Illinois courts. [*Id.* 14 Ill.App.3d at 970, 304 N.E.2d at 31.]

■ In applying these principles to the present case, we are persuaded that appellant has alleged sufficient facts to support jurisdiction under § 13–423(a)(1). Appellees solicited appellant in the District of Columbia to perform work in major part in the District of Columbia.[12] Moreover, the contract at issue was executed and performed in significant part in the District.[13]

---

11. The Illinois statutory provision under which service of process was made is the same as our § 13–423(a)(1).

12. *See Morton v. Environmental Land Systems, Ltd. supra*, 55 Ill.App.3d at 372, 13 Ill.Dec. at 83, 370 N.E.2d at 1110 ("[A]ctivities such as the solicitation of a contract is the transaction of business within the statutory definition even where the actual acceptance of the contract occurred outside of the forum and where it was to be governed by non-forum law . . . .") (cita-

tion omitted) (statutory provision coextensive with due process clause; accordingly, analysis required only one step).

13. Appellees contend that they did not contemplate that appellant would perform services for them in the District and that in any event appellant performed some of his services at the United States Patent Office in Virginia—a fact which they assert should negate any indication that they invoked the benefits and protections of the District laws. However, appellees' con-

We hold that appellees were transacting business in the District within the meaning of § 13–423(a)(1). Moreover, we are satisfied that appellees' contacts are of such a quality that the assertion of personal jurisdiction over appellees does not offend due process.[14] Appellees contacted appellant to perform work which they had reason to know would be performed in large part in the District. Appellant accepted the contract and agreed to lend his technical expertise toward appellees' work in the Florida litigation and performed part of his obligation under the contract in the District as both parties contemplated. Thus the contract had substantial connection with the District. *McGee, supra.*[15] Finally, far from being fortuitous or accidental, appellees' contacts were deliberate and voluntary as evidenced by the communications between appellees and appellant in the District, which appellees had initiated in the first instance.[16] In sum, appellees voluntarily initiated, and entered into, a contract with one they knew to be located in the District and engaged in a transaction which had a substantial connection with the District and which they foresaw would have consequences here.[17] In so doing, appellees have invoked the benefits and protections of the District's laws. *Hanson v. Denckla, supra.* Within the meaning of § 13–423(a)(1), ap-

14. *See* 2 Moore's Federal Practice ¶ 4.25[5], at 4–266 (2d ed. 1980) ("If there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction," *quoted in Aftanase v. Economy Baler Co., supra* at 196 n.2).

15. *Compare Bueno v. La Compania Peruana,* 375 A.2d at 8–9:

> For an entity to be transacting business within this jurisdiction some purposeful, affirmative activity within the District of Columbia is required. The claim must arise of such activity. Measured by this standard, the facts show an absence of transacting business within this jurisdiction by C.P.R. *C.P.R. did not initiate or pursue contract negotiations in the District of Columbia.* All such was done by C.B.B. No services were to be provided by C.P.R. in the District of Columbia and all its duties under the con-

tentions are manifestly contradicted by the record. Appellant is a District of Columbia lawyer and appellees contacted appellant at his offices located here in the District. Any assertion that appellees did not know that appellant was performing work for them in the District is belied by the subsequent discussions by telephone and mail that took place between appellant and appellees, and the fact that appellees delivered at least partial payment to appellant in the District. *See* note 3, *supra.*

*Compare Cook Assoc's, Inc. v. Colonial Broach & Mach. Co., supra* 14 Ill.App.3d at 971, 304 N.E.2d at 32:

> The contract in question, providing for payment by defendant in exchange for services rendered by plaintiff, was oral, and the parties did not specify in their telephone conversation as to where the services were to be performed. However ... the nature of the contract was such that both parties knew plaintiff's services would be performed from its office in Illinois.

tract were to be performed either in South America or, with respect to the satellite, in outer space. [Citations omitted; emphasis added.]

16. *See Vencedor Mfg. Co. v. Gougler Indus., Inc., supra* at 891 ("After *McGee* it seems fair to say one who solicits in a state may be sued there if the transactions he has sought goes sour."); *Cohn-Daniel Corp. v. Corporation De la Fonda, Inc., supra* at 342 ("[Defendant] made a purposeful choice to do business with this Texas corporation. Its contacts were not 'fortuitous or accidental.' ") (Plaintiff, as a result of a contract negotiated by telephone and mail, performed a great deal of its obligations in Texas and received some of its payments there).

17. *See Cook Assoc's, Inc. v. Colonial Broach & Mach. Co., supra.*

*Cf. Product Promotions, Inc. v. Cousteau, supra* at 491 ("[A]ppellant had to present prima facie evidence that (1) a contract to be performed in whole or in part within Texas existed between itself and appellees and (2) the present suit arose out of that contractual arrangement").

*See also Pedi Bares, Inc. v. P & C Food Markets, Inc., supra* at 935: "[T]he [Kansas] single act statute ... permits the exercise of personal jurisdiction over a nonresident when the sole basis is a contract with a resident to be performed in Kansas." (Citations omitted.) "In the instant case, the purchase orders were accepted in Kansas. The goods were manufactured in, and shipped from Kansas. Partial payment was made to Pedi-Bares in Kansas." *Id.* at 937 (upholding long-arm jurisdiction under both the statutory provision and the due process clause).

pellees, by their conduct,[18] transacted business within the District of Columbia.

Having concluded that the assertion of personal jurisdiction would not offend due process, we hold that the trial court erred in granting appellees' motion to quash service. Accordingly, we reverse and remand with the instructions to deny the motion to quash service.

*So ordered.*

KELLY, J., concurs in the result.

NEWMAN, Chief Judge, with whom MACK and FERREN, Associate Judges, join, concurring:

I concur in the per curiam opinion, but would go one step further. The per curiam opinion does not resolve whether jurisdiction might be sustained under similar operative facts but where plaintiff, as opposed to the defendant, had initiated the contacts. I would note that the assertion of jurisdiction has withstood a due process challenge even where the initial solicitation to enter a contract was made by plaintiff rather than the defendant. *See, e. g., Vencedor Manufacturing Co. v. Gougler Industries, Inc.,* 557 F.2d 886 (1st Cir. 1977); *Shealy v. Challenger Manufacturing Co.,* 304 F.2d 102, 104 (4th Cir. 1962); *J. Henrijean & Sons v. M. V. Bulk Enterprise,* 311 F.Supp. 417, 421 (W.D.Mich.1970); *Dornbos v. Kroger Co.,* 9 Mich.App. 515, 157 N.W.2d 498 (1968).

The United States Court of Appeals for the First Circuit observed in *Gougler Industries* that "[t]he intricacies of offer, counteroffer, and invitation to make an offer are irrelevant to the central concern for fairness that should illuminate this area of the law." 557 F.2d at 890. And, as the court stated in *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977):

> The principal distinction between the present case and *McGee* is that there the defendant made the initial solicitation

while here that was made by the plaintiff. Initial contact is not decisive. The subsequent conduct of P & C shows that it purposely availed itself of the privilege of carrying on activities to secure goods from a Kansas manufacturer and seller. [*Id.* at 937.]

So, too, here, where a Florida defendant purposely availed itself of the privilege of carrying on activities to secure services from a district of Columbia attorney, it should not matter whether the plaintiff or defendant made the initial contact.

HARRIS, Associate Judge, with whom KERN and NEBEKER, Associate Judges, concur, dissenting from the result:

Today we draw the curtain on a long-playing act of virtual judicial futility. Our resolution of this appeal has no precedential significance, as the court is split 4-4 on the significant legal issue presented. The lead opinion incorrectly is designated as a "per curiam" opinion. It cannot be, as a per curiam opinion speaks for the court, whereas the lead opinion speaks only for four judges. Similarly, there is no holding here; there is nothing more than a judgment of reversal. Only by virtue of Judge KELLY's concurrence in the result of reversal is the trial court's order overturned.

It is that result from which I respectfully dissent. In doing so, substantial reference is made to the lead opinion which four of my colleagues endorse. It should be noted that never before have we failed to have a majority (or even a plurality) opinion in an en banc case. The four-judge opinion is circuitous in its reasoning, as quite obviously it seeks incorrectly to have the requisite statutory analysis swallowed up by due process considerations. A major portion of the four-judge opinion consists of the discussion of, and out-of-context quotations from, other opinions which deal with significantly different statutes and/or substantially different factual situations.[1]

---

18. We, of course, focus solely on the nonresident defendants' contacts with the District of Columbia as the basis for this holding, as is commanded by *Hanson v. Denckla, supra. See also* p. 994 *supra.*

1. For example, the opinion purports to find support in *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977). *Ante,* at 994. However, even a fleeting review of that opinion reveals that the Kansas

It is important to recognize what the four-judge opinion does not do. Since it has no efficacy beyond this case, it does not change the law in this jurisdiction. Remaining controlling on the issues before us are the Supreme Court's decision in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and our en banc decision in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, D.C.App., 355 A.2d 808 (1976) (en banc). I firmly believe that those two decisions, considered together with virtually all other relevant authorities, compel affirmance of the trial court in this case.

I

This is a rather simple case, which was treated simply—and correctly—by the trial court. A Florida law firm was representing a client in the defense of a suit claiming trademark infringement, unfair competition, and false designation of foreign goods.[2] As is often true, the firm had little or no expertise in those areas of the law, and it engaged William Mouzavires to assist it in the Florida litigation. He, like many other patent attorneys, has his office in the District of Columbia.

When a dispute arose between plaintiff and defendants as to plaintiff's fee, plaintiff sought to sue the Florida lawyers (with service by means of certified mail sent to their North Miami Beach office) in the Superior Court of the District of Columbia. Jurisdiction over the Florida defendants was predicated upon one of the six provisions of our long-arm statute, namely, D.C. Code 1973, § 13–423(a)(1). Defendants promptly moved to quash the service of process and to dismiss the suit for lack of personal jurisdiction. Their able counsel found it necessary to cite only one case in support of his position: *Environmental Research, supra*. In opposing that motion, plaintiff's counsel cited just two opinions: *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and the dissent in *Environmental Research*. The experienced trial judge, undoubtedly satisfied that the issue was controlled by *Environmental Research*, took little time in granting the motion to quash.

These appeals initially were decided by a divided division of the court. Chief Judge Newman and Judge Mack apparently viewed what I perceived to be controlling precedents differently than I, and voted to reverse the trial court's action. I dissented.[3] Defendants' petition for rehearing en banc was granted, and the division's opinions were vacated. Hence, they were not published in Atlantic 2d.

Today, while only four members of the court concur in the lead opinion, a fifth concurs in the result of reversal. Thus, once again, as I see it, we are faced with a misapplication of established law. It should be noted that this is not the first case in which *Environmental Research* has been avoided. In *Rose v. Silver*, D.C.App., 394 A.2d 1368 (1978), another division of the court—which included Judges NEWMAN and MACK—sought to distinguish the indistinguishable and resolved a long-arm case favorably to a plaintiff in a manner which was inconsistent with *Environmental Research*.[4] I shall not dwell here upon

long-arm statute with which that court dealt is quite different from the "transacting any business" statute which is before us (the Kansas statute has a single-act provision, permitting the exercise of personal jurisdiction over a nonresident when the sole basis is a contract with a resident to be performed in Kansas). The same is true of *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which dealt with a statute providing long-arm jurisdiction over nonresident insurance companies with in-state policyholders. [Our comparable provision is D.C.Code 1973,

§ 13–423(a)(6).] Reliance upon inapposite cases does little but mislead.

2. The Florida law firm is Baxter, Friedman, Robbins & Fisher. It and its partners were sued by Mouzavires. Since there are cross-appeals in this case, I refer generally to the Florida lawyers as the defendants and to the District of Columbia lawyer as the plaintiff.

3. The division's opinions were issued on December 21, 1979.

4. The *Rose v. Silver* division's assertion that that case was "materially different from" *Envi-*

what I consider to be the flaws in *Rose v. Silver;* I expressed them in a separate opinion stating why I voted to grant the petition for rehearing en banc in that case. *Rose v. Silver,* D.C.App., 398 A.2d 787 (1979) (HARRIS, J., reasons for voting to grant rehearing en banc).

## II

If the en banc court had not vacated the earlier division majority opinion, it would have had a precedential life of its own. That life would have been a troubled one, for it was obvious to any objective observer that the division opinion and *Environmental Research* were in irreconcilable conflict. Now, while the result of reversal is obtained, no precedent emerges from this case. Nonetheless, I deem it necessary to address what strike me as the fatal flaws in the per curiam opinion.[5]

To set the proper background, I quote the sole provision of our long-arm statute upon which jurisdiction is claimed to be based. Section 13–423 of the Code provides in pertinent part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia.

I turn now to the faulty premise—or, perhaps more accurately, to the two interrelated faulty premises of the four-judge opinion. That opinion states in part:

[T]he legislative history of our long-arm statute, as well as decisions by the courts of Maryland and Virginia construing their comparable statutory provisions, compels the conclusion that the "transact-

ing any business" provision is coextensive with the due process clause. * * *

\* \* \* \* \* \*

Decisions in this jurisdiction interpreting the "transacting any business" provision are but applications of this principle. It is now well-settled that the "transacting any business" provision embraces those contractual activities of a nonresident defendant which cause a consequence here. [*Ante,* at 992–993; citations and footnote omitted.]

Viewed from an overall perspective, the four-judge opinion would blur the controlling statute into obscurity and predicate resolution of the case on an abstruse due process theory. However, that may not properly be done. The first sentence quoted above is essentially an oversimplification. The correct standard, as expressed in *Environmental Research,* is that long-arm statutes such as that before us "permit the exercise of personal jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution." The four-judge opinion seeks to convey the impression that to the extent that a long-arm statute and the due process clause may be deemed to be coextensive, the former is subsumed by the latter, which is not true. If it were, of course, there would be no need for the long-arm statute; actions against nonresident defendants could be predicated jurisdictionally solely on the due process clause. However, as has been stated by the Fourth Circuit:

Generally, the application of long arm statutes involves two steps. It is necessary to determine first whether the statute permits service of process on the nonresident defendant, and second, whether

*ronmental Research* [394 A.2d at 1369] was, in my view, not merely dubious, but manifestly inaccurate.

5. I see no need to deal other than in this footnote with Chief Judge NEWMAN's brief concurring opinion. It is joined in by Judges MACK and FERREN; those three constituted the division in *Rose v. Silver,* to which I have referred above. I believe it is fair to state that they view the relevant section of the long-arm

statute as a meaningless appendage which is to be ignored in favor of due process considerations. They apparently feel that if any nonresident utilizes the services of a District of Columbia resident, the nonresident becomes subject to suit here irrespective of whether the provisions of the long-arm statute provide for such jurisdiction. Legislating, of course, is not a proper judicial function.

service under the statute violates the Due Process Clause of the federal constitution. [*Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 703 (4th Cir.), *cert. denied*, 400 U.S. 942, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970).] [6]

Thus, any analysis of whether the defendants properly may be subjected to the Superior Court's jurisdiction not only must begin with, but moreover must turn upon, whether they transacted business within the District of Columbia. The last sentence quoted above from the four-judge opinion—"that the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here"—is both conceptually wrong and unsupported by any sound authority.

Having thus established a flawed analytical framework, the four-judge opinion proceeds to state the issue as follows:

Thus, to determine whether the statute can reach the conduct at issue, we must consider whether appellees had sufficient contacts with the District such that the assertion of personal jurisdiction comports with due process. [*Ante*, at 993].

That statement evades the underlying question of whether the defendants met the initial jurisdictional prerequisite of having transacted any business here. As one secondary authority has noted, "no abstract test for determining whether or not a person transacts any business within [a] state has been articulated, and accordingly each case must be decided on its particular facts." Annot., 27 A.L.R.3d 397, 429 (1969). This court has no authority to act in a fashion which serves to amend the statute. As the Fourth Circuit correctly has observed: "[I]t is clear that at least where the legislature has acted, even though the [long-arm] statute may not go to the limits

of due process, the courts of a state may not go further and assert jurisdiction over persons not embraced within that legislation." *Beaty v. M. S. Steel Co.*, 401 F.2d 157, 161 (4th Cir. 1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed.2d 691 (1969). Yet that is precisely what the resolution of these appeals by the majority does, as reflected by the four-judge opinion's ultimate conclusion:

In sum, appellees voluntarily initiated, and entered into, a contract with one they knew to be located in the District and engaged in a transaction which had a substantial connection with the District and which they foresaw would have consequences here. In so doing, appellees have invoked the benefits and protections of the District's laws. [*Ante*, at 997; footnote and citation omitted.]

That summation is fallacious for two reasons. First, the defendant Florida lawyers did not invoke "the benefits and protections of the District's laws"; the plaintiff did. Second, even had they done so, that would be but one factor to consider in deciding the underlying jurisdictional question under the statute, namely, whether they transacted business here. The resolution of that question should be controlled by *Environmental Research* and by other relevant authorities.

### III

As has been noted, the Florida defendants did engage the District of Columbia plaintiff to assist them in a Florida lawsuit. Plaintiff performed some of his services in Florida, some in Virginia, and some in the District. Defendants have had no contacts with the District of Columbia other than their utilization of plaintiff's services in connection with the Florida suit. There is no claim that any of the defendants entered

---

6. This principal is well established. Illustratively, the four-judge opinion quotes the Supreme Court's recent recognition that "the proper approach [is] to test jurisdiction against both statutory and constitutional standards." *Ante*, at 992, quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980). *See also, e. g., AMAF International Corp. v. Ralston*

*Purina Co.*, D.C.App., 428 A.2d 849, 851 (1981) (two-step analysis required); *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd.*, 207 U.S.App.D.C. ——, 647 F.2d 200 (1981) (separate and distinct analyses made of due process and "transacting any business" issues); *Gatewood v. Fiat, S.p.A.*, 199 U.S.App.D.C. 238, 241, 617 F.2d 820, 823 (1980) (two-step analysis necessary).

the District of Columbia to negotiate with plaintiff or to work with him.[7] Apparently the few communications from defendants to plaintiff were be telephone or mail (the four-judge opinion cites one telephone call and one letter), and were informational in character.[8] Additionally, defendants derived no direct economic benefit from their relationship with the plaintiff. At all times it was the plaintiff who was transacting business in the District, not the defendants. That situation is precisely the type which we held in *Environmental Research* not to confer jurisdiction over nonresident defendants under § 13–423(a)(1) of the Code. The following portion of our *Environmental Research* decision should be dispositive of this case:

> Appellant does not assert that the limited correspondence or telephone communications engaged in between it and the appellees satisfy the constitutional requirement for in personam jurisdiction. Rather, the thrust of appellant's argument is that since *it* was performing services in the District of Columbia for the benefit of appellees, its own activities here constituted a proper basis for the exercise of personal jurisdiction over appellees. To accept such a position would be effectively to remove any protection which the due process clause affords a nonresident defendant. The position for which appellant argues has been rejected by the Supreme Court:

> > The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Citations omitted.] [9]

> Thus, a plaintiff cannot rely on his own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction. The mere fact that a nonresident has retained the professional services of a District of Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws. [355 A.2d at 812 (footnotes omitted).]

## IV

The unfortunate but inescapable fact is that the majority, in voting for reversal, is unwilling to follow such clear and controlling precedents as *Environmental Research*

7. In a recent relevant case, our circuit court stated:
> Absent some indication that the agreement was signed or negotiated in the District of Columbia, the fact that one party is a resident of the forum state is an insufficient basis for asserting jurisdiction over the other. [*Willis v. Willis,* 655 F.2d 1333 at 1338 (D.C. Cir.1981).]

The four-judge opinion states: "According to the agreement, appellant was to work primarily in the District of Columbia with some consultation and possibly some court appearances in Florida." *Ante,* at 990. There was no such "agreement"; plaintiff's decision to perform much of his work in the District of Columbia was entirely his own.

8. We have held that telephone calls, letters, and a precontractual interview in the forum state by a nonresident defendant fall short of meeting due process requirements. *Basil, Inc.*

*v. Guardino,* D.C.App., 424 A.2d 70 (1980). *See also Willis v. Willis, supra* note 7 (making telephone calls to the District provides insufficient affiliating circumstances to empower District court to exercise jurisdiction over nonresident defendant).

9. The language thus quoted in the *Environmental Research* opinion was written in the landmark *Hanson v. Denckla* opinion, *supra,* 357 U.S. at 253, 78 S.Ct. at 1239. That decision was issued in 1958; no Supreme Court opinion since then has in any way eroded its rationale. Indeed, the Supreme Court twice recently has reaffirmed. *Hanson v. Denckla. See World-Wide Volkswagen Corp. v. Woodson, supra* note 6; *Kulko v. Superior Court,* 436 U.S. 84, 93–94, 98 S.Ct. 1690, 1697–1698, 56 L.Ed.2d 132 (1978). *See also Rush v. Savchuk,* 444 U.S. 320, 329, 100 S.Ct. 571, 578, 62 L.Ed.2d 516 (1980).

and *Hanson v. Denckla*.[10] The principles set forth in those cases (and others) readily have been followed by us before. Illustratively, in *Basil, Inc. v. Guardino*, D.C.App., 424 A.2d 70, 77 (1980) (KELLY, J.), we recognized:

> Furthermore, in determining whether an instate activity may serve as the basis of jurisdiction over a nonresident defendant, the plaintiff's performance does not control: "It is [the defendant's] activity in the state which must provide the basis for jurisdiction." [Citations omitted; *see also id.*, at 74 & n.6.]

The majority's disposition of this case disserves not merely the losing parties, whose due process rights are being violated, but also the bench and the bar with respect to future cases. *Environmental Research*, which unquestionably has constituted and still constitutes binding authority in this jurisdiction, holds that in this type of situation, a resident professional may not bring suit here against a nonresident client based upon work which has been done by the resident professional in the District of Columbia. *See also Zyblut v. Shippers Best Express, Inc.*, D.C.App., 408 A.2d 978 (1979). The five judges who have voted for reversal also run afoul of the Supreme Court's recent opinion in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In concluding that due process considerations precluded long-arm jurisdiction in that case, the Supreme Court specifically reaffirmed the principles of *Hanson v. Denckla*. The Court analyzed the record and found

> a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. * * * [444 U.S. at 295, 100 S.Ct. at 566.]

A comparable absence of affiliating circumstances exists in this case.

The result reached by my five colleagues not only is unprecedented; it is contrary to all applicable and controlling precedents. While the four-judge opinion has no vitality as to future cases, I respectfully dissent from the majority's disposition of these appeals.

GALLAGHER, Associate Judge, Retired, dissenting:

I join my three colleagues in disagreeing with the four-judge opinion and in dissenting from the judgment entered in these appeals. In light of the 4–4 division on the legal issues presented, no purpose would be served by my writing a detailed separate statement of my reasons for so voting.

---

10. Those decisions have not struck trial judges—including the one in this case—as obtuse. In *Textile Museum v. F. Eberstadt & Co.*, 440 F.Supp. 30 (D.D.C.1977), one District Court judge rejected long-arm jurisdiction which had been asserted under § 13–423(a)(1). In doing so, he cited and succinctly characterized *Hanson v. Denckla* and *Environmental Research* as follows:

> *See Hanson v. Denckla, supra*, 357 U.S. at 253 [78 S.Ct. at 1239] (unilateral activity of persons claiming relationship with nonresident defendant insufficient basis for jurisdiction); *Environmental Research Intl., Inc., su-*

*pra*, at 812 (plaintiff may not rely on its District activities to establish jurisdiction over defendant). [*Id.*, at 33.]

Soon thereafter, another District Court judge rejected a claim of jurisdiction under § 13–423(a)(1), and stated in part:

> The recent discussion of § 423(a)(1) by the District of Columbia Court of Appeals in *Environmental Research International v. Lockwood Engineers, Inc.*, 355 A.2d 808 (1976), is persuasive and controlling in the view of this Court. [*Realty World Corp. v. Real Estate World Services, Inc.*, 105 D.Wash.L.Rep. 2121, 2125 (D.D.C.1977).]